UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

GUY BLESSINGER,
AUDRA NISKI,
NELSON FERREIRA,
individually and on behalf
of all others similarly-situated,

  Plaintiffs,     CASE NO.:

v.

WELLS FARGO & COMPANY,

  Defendant.
_____/

## CLASS ACTION COMPLAINT

Named Plaintiffs, Guy Blessinger ("Blessinger"), Audra Niski ("Niski"), and Nelson Ferreira ("Ferreira")(collectively "Plaintiffs"), file this Class Action Complaint against Defendant, Wells Fargo & Company ("Defendant"), alleging that Defendant failed to provide them and the putative class members whom they seek to represent with a COBRA notice that complies with the law.  In further support thereof, Plaintiffs state as follows:

## BRIEF OVERVIEW

1. Defendant, the plan sponsor and plan administrator of the Wells Fargo & Company Health Plan ("Plan"), violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by

COBRA, of their right to continue their health insurance coverage following an occurrence of a "qualifying event" as defined by the statute.

2. COBRA is a remedial statute that should be interpreted in favor of the employee.

3. Indeed, the legislative history shows that Congress enacted COBRA in 1986 as a result of the reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay. The purpose behind its notice requirements is to facilitate and assist individuals in electing continuation coverage should they so choose, not discourage them from doing so as Defendant's does here.

4. As a threshold matter, Defendant's COBRA notice is not "written in a manner calculated to be understood by the average plan participant," because it attempts to scare individuals away from electing COBRA. It does so by including an ominous warning suggesting that the submission of even "incomplete" information when electing COBRA may result in civil, or even criminal, penalties.

5. The election form also needlessly references a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual."

6. This information is thrown into Defendant's notice without context, much less with an explanation of why potential criminal penalties, or IRS penalties, are somehow relevant to the COBRA election process.

7. Threats of criminal penalties and IRS fines simply have no place in a COBRA election notice, a process which is supposed to facilitate COBRA coverage election rather than intimidating people into not electing coverage.

8. Adding such information discourages people from electing continuation coverage and distorts the information provided in the notice while also discouraging people, including Plaintiffs here, from electing COBRA, and also violating 29 C.F.R. § 2590.606–4(b)(4)'s requirement that notices be written in a manner calculated to be understood by the average plan participant.

9. Not only that, in the context of another ERISA provision, this standard "will usually require the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents." 29 C.F.R. § 2520.102-2 (governing style and format of summary plan description).

10. Defendant's notice, especially its inclusion threats of criminal penalties and IRS fines in its COBRA notice violates this maxim, because Defendant fails to provide a single clarifying example and/or illustration demonstrating how or why plan participants risk criminal penalties and/or IRS fines for submitting even incomplete information.

11. Additionally, by omitting the required "knowledge" or "intent" necessary to commit fraud from the highlighted sentence in its notice, to commit "fraud" under Defendant's COBRA notice knowledge is not required.

12. So, according to Defendant's notice, a person who merely files "incomplete" information in an application—even without knowledge or intent to mislead or conceal—commits fraud.

13. That is drastically different than the heightened level of "knowledge" required to violate any purported ERISA fraud statute, including 18 U.S.C. § 1027, a statute Defendant has argued may apply (it does not).

14. Simply put, section § 1027 requires intent. Defendant's COBRA form does not.

15. Based, at least in part, on these threats and warning Plaintiffs did not enroll in the continuation coverages made available to them, including medical, dental, and vision.

16. The loss by Plaintiffs of medical, dental, and vision continuation coverage are directly attributable to the "warning" language needlessly included in Defendant's COBRA notice because their inclusion resulted in Plaintiffs not enrolling in COBRA continuation coverage.

17. In fact, because of the inaccurate and misleading threats and warnings in Defendant's COBRA notice, which resulted in Plaintiffs not electing COBRA continuation coverage, Plaintiffs lost their health insurance.

18. Plaintiffs, in turn, then incurred medical-related bills for which they had to pay out of pocket, causing them further economic harm.

19. Not only that, consistent with Judge Martinez's recent landmark COBRA notice case decision from *Bryant v. Wal-Mart Stores, Inc., No.* 16-24818-

CIV, 2019 WL 3542827, at *5 (S.D. Fla. Apr. 18, 2019), Defendant's COBRA form violates 29 C.F.R. § 2590.606–4(b)(4)(vi) because it fails to sufficiently identify the Plan Administrator. Instead, it merely identifies the COBRA Administrator, BenefitConnect.

20. As Judge Martinez opined in *Bryant*, inclusion of the COBRA administrator's (instead of the plan administrator's) name, address, and telephone number does not satisfy the election notice requirements of section 2590.606-4(b)(4)(i). And without the plan administrator's name, address, and telephone number, Defendant's notice is not "sufficient to permit the discharged employee to make an informed decision whether to elect coverage."

21. As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiffs seek statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION AND VENUE

22. Venue is proper in the United States Court for the Middle District of Florida because the events giving rise to these claims arose in this District.

23. Plaintiffs Niski and Ferreira are Florida residents, reside in this District, and experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2) within this District.

24. Plaintiff Guy Blessinger experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2). Venue is proper here pursuant to 28 U.S. Code § 1391(d).

25. Defendant is a California-based corporation doing business in Florida and in this District.

## SUPPORTING LAW AND FACTUAL ALLEGATIONS

### *COBRA Notice Requirements*

26. The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

27. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161. (Emphasis added).

28. Notice is of enormous importance.  The COBRA notification requirement exists because employees are not presumed to know they have a federally protected right to continue healthcare coverage subsequent to a qualifying event.

29. COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage

6

rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4).  This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

30. To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

31. In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110.00 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).

32. Additionally, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

33. Here, Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

34. Defendant did not use the Model Notice to notify plan participants of their right to continuation coverage even though the Model Notice adequately provides all required information and would have provided Defendant with a "safe harbor" if used. The Model Notice further demonstrates how the information can, and is required to, be written in a manner calculated to be understood by the average plan participant providing a near-foolproof way for persons to sign up for continuing coverage of their existing benefits.

35. Rather than use the Model Notice, Defendant authored and disseminated a notice which omitted critical information required by law and needlessly including language meant to deter and otherwise "chill" election of COBRA benefits. The information Defendant omitted from its notice is information that is included in the Model Notice.

36. Defendant's deficient Notice discourages participants from enrolling in continuation coverage, including the Named Plaintiffs here.

37. Defendant's Notice violates several key COBRA requirements, as explained below:

    a. The notice violates 29 C.F.R. § 2590.606-4(b)(4) by including inaccurate and misleading threats of criminal penalties and fines which simply have no place in a COBRA election notice;

    a. The notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the

      plan for administration of continuation coverage benefits; and, finally,

  b. Defendant failed to provide a notice "written in a manner calculated to be understood by the average plan participant."

38. Defendant's COBRA Notice confused Plaintiffs and resulted in their inability to make an informed decision as to electing COBRA continuation coverage.

39. Defendant failed to provide in its Notice a single clarifying example or illustration as to precisely what type of submission, even an "incomplete" submission, of its Notice potentially exposed plan participants to criminal penalties and/or IRS fines.

40. Nor does Defendant's notice eliminate "technical jargon" and/or prohibited "complex sentences" from its Notice, including as to criminal and civil penalties, the inclusion of which violates the maxim its notice be "written in a manner calculated to be understood by the average plan participant."

41. Reading the misstatements of law contained in the Notice with the notice as a whole precludes the Defendant's notice from "written in a manner calculated to be understood by the average plan participant," particularly because the threats of criminal and civil penalties collectively make up at least two separate pages of the notice, the "Certification" form and the "COBRA Election Form" (the latter of which also happens to be the most important page in the terms of the documents needed to actually elect COBRA continuation coverage).

42. As a result of the deficient notice, Plaintiffs did not elect COBRA continuation coverage and Plaintiffs suffered a tangible injury in the form of economic loss, specifically the loss of health insurance coverage. Insurance coverage is an employer subsidized benefit of employment of tremendous monetary value, the loss of which is a tangible economic injury.

43. Furthermore, Plaintiffs suffered a second tangible economic loss when they paid out-of-pocket for medical expenses incurred after they lost their health insurance.

44. Plaintiffs suffered an additional concrete harm in the form of stress and anxiety caused by the loss of their health insurance.

45. Additional time was spent trying to figure out which providers would treat them now that they lacked health insurance.

46. Plaintiffs did not enroll in the continuation coverages made available to them, including medical, dental, and vision based, in part, on the based on the misleading and inaccurate threats and warnings contained in Defendant's COBRA Notice.

47. The loss of medical, dental, and vision are directly attributable to the "warning" language because they led to Plaintiffs not enrolling in COBRA continuation coverage.

48. In fact, because of the inaccurate and misleading threats and warnings in Defendant's COBRA notice, which resulted in Plaintiffs not electing COBRA continuation coverage, Plaintiffs lost medical, dental, and vision insurance.

### *Facts Specific to Named Plaintiffs*

49. Plaintiff Blessinger worked for Wells Fargo in customer service from August of 2016 through approximately September 2020.

50. On September 2, 2020, Plaintiff Blessing's employment was terminated.

51. Plaintiff Blessinger was not terminated for "gross misconduct" and was, therefore, eligible for continuation coverage.

52. Following Plaintiff Blessinger's termination, Defendant caused its COBRA administrator to mail him the deficient COBRA notice

53. The COBRA notice was not written in a manner calculated to be understood by the average plan participant.

54. Plaintiff Ferreira worked for Wells Fargo as an Assistant Vice President/ Branch Manager from April of 2009 through approximately April 29, 2019.

55. On April 29, 2019, Plaintiff Ferreira's employment ended when he resigned.

56. Plaintiff Ferreira was not terminated for "gross misconduct" and was, therefore, eligible for continuation coverage.

57. Following Plaintiff Ferreira's resignation termination, Defendant caused its COBRA administrator to mail him and his family members, all of whom were covered under Plaintiff Ferreira's health plan with the Defendant, the deficient COBRA notice.

58. Plaintiff Niski worked for Wells Fargo as a branch manager from 1990 through approximately August of 2019.

59. On August 16, 2019, Plaintiff Niski's employment was terminated.

60. Plaintiff Niski was not terminated for "gross misconduct" and was, therefore, eligible for continuation coverage.

61. Following Plaintiff Blessinger's termination, Defendant caused its COBRA administrator to mail him the deficient COBRA notice

62. The COBRA notice was not written in a manner calculated to be understood by the average plan participant.

63. The COBRA notice was not written in a manner calculated to be understood by the average plan participant.

64. The COBRA notice did not provide Plaintiffs with the substantive information to which they were entitled pursuant to federal law, as set out further below, giving rise to this lawsuit.

65. Because this is not an ERISA benefits case, Plaintiffs were not required to exhaust any administrative remedies through Defendant prior to bringing suit.

66. Any attempts to exhaust the administrative remedies would have been futile as this is not an ERISA benefits case. In fact, exhaustion of administrative remedies is not required because Plaintiffs were not provided with proper notice of rights in the first instance.

## *Violation of 29 C.F.R. § 2590.606-4(b)(4)*
## *Defendant failed to provide notice written in a manner calculated "to be understood by the average plan participant"*

67. Whether a defendant's COBRA notification complies with the law turns on whether the notice is understandable by an average plan participant. This requirement has been interpreted as an objective standard rather than requiring an inquiry into the subjective perception of the individual plan participants.

68. 29 U.S.C. § 1166(a)(4)(A) requires plan administrators to notify the former employee of their right to receive continuation coverage with a notice that must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

69. Defendant's COBRA notice includes language warning of and threatening certain criminal and IRS penalties for noncompliance with its notice procedures.

70. Specifically, the notice includes the following language: "any person who knowingly provides materially false, incomplete, or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsors. The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties."

71. The election form also needlessly references a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual."

72. Defendant first buries its "COBRA Election Form" in the middle of its voluminous "COBRA Election Notice Summary."

73. Adding to the confusion, Defendant placed its misleading "certification" immediately after the election form without any reference to it in the Defendant's instructions on how to enroll using the paper election form in its "COBRA Election Notice Summary."

74. In fact, nowhere in Defendant's "COBRA Election Notice Summary" are there instructions on what to do with the arbitrary "certification" form, including whether it is somehow required to enroll in COBRA.

75. Defendant further includes language of monetary penalties for failure to provide tax identification numbers for those electing COBRA benefits.

76. The DOL Model Notice and its COBRA Continuation Coverage election Form does not contain such a "certification" regarding possible IRS penalties.

77. Yet the Model DOL still manages to convey the required information, and does so in only seven pages compared to Defendant's nineteen pages.

78. The inclusion of the threats of criminal penalties and the other COBRA violations specifically identified herein caused Plaintiffs to lose health insurance.

79. Without the above required information, coupled with its inclusion of needless criminal and IRS penalties, Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i)*
### *Failure to Identify Plan Administrator*

80. The COBRA notice provided to Plaintiffs omitted important information identifying the party responsible under the Plan for administration of continuing coverage benefits.  Instead, the third-party administrator, BenefitConnect, is identified, but that is not what the statute requires.  Thus, Plaintiffs were never informed *who* administers the continuation coverage, which is the Defendant entity named here.

81. Defendant was required to provide "in a manner calculated to be understood by the average plan participant … the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i).  Defendant's Notice failed to comply with this fundamental requirement.

82. Defendant's notice only identifies a third-party administrator.  A third-party administrator is different from the Plan Administrator.

83. Identifying the Plan Administrator is critical because the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee, particularly in cases, like this, involving large corporations with multiple entities located throughout the country.

## CLASS ACTION ALLEGATIONS

84. Plaintiffs bring this action as a class action pursuant to Rule 23 Fed.R.Civ.P. on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were the COBRA notice by Defendant, in the same form sent to Plaintiffs, during the applicable statute of limitations period, as a result of a qualifying event, as determined by Defendant, who did not elect COBRA**.

85. Because this is not an ERISA benefits case, no administrative remedies exist as a prerequisite to Plaintiffs' claim on behalf of the Putative Class. Any efforts related to exhausting such non-existent remedies would have been futile.

86. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

87. <u>Typicality</u>: Plaintiffs' claims are typical of the Class. The COBRA notice that Defendant sent to Plaintiffs was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiffs received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

88. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class members; he has no interests antagonistic to the class, and he has retained counsel experienced in complex class action litigation.

89. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.    Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

    b.    Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    c.    Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

    d.    The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and, finally,

    e.    Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

90. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution.

91. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

92. Plaintiffs intend to send notice to all Class Members. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party COBRA administrator.

## CLASS CLAIM I FOR RELIEF
*Violation of 29 U.S.C. § 1166 and*
*29 C.F.R. § 2590.606-4, Enforced Through 29 U.S.C. § 1132*

93. The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

94. Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

95. Plaintiffs and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware of the same.

96. On account of such qualifying event, Defendant sent Plaintiffs and the Class Members a COBRA notice.

97. The COBRA notice that Defendant sent to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above, for which Plaintiffs bring this civil action under the authority found in 29 U.S.C. § 1132.

98. These violations were material and willful.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

a. Designating Plaintiffs' counsel as counsel for the Class;

b. Issuing proper notice to the Class at Defendant's expense;

c. Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d. Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e. Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f. Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g. Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 3rd day of May, 2022.

    Respectfully submitted,

    */s/ Brandon J. Hill*
    **LUIS A. CABASSA, ESQ.**
    Florida Bar Number: 053643
    Direct No.: 813-379-2565
    **BRANDON J. HILL, ESQ.**
    Florida Bar Number: 37061
    Direct No.: 813-337-7992
    **WENZEL FENTON CABASSA, P.A.**
    1110 North Florida Ave., Suite 300
    Tampa, Florida 33602
    Main No.: 813-224-0431
    Facsimile: 813-229-8712
    Email: lcabassa@wfclaw.com
    Email: bhill@wfclaw.com

    ***Attorneys for Plaintiff***