## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**GUY BLESSINGER,**
**AUDRA NISKI,**
**NELSON FERREIRA,**
**individually and on behalf**
**of all others similarly-situated,**

     **Plaintiffs,**

**v.**                    **CASE NO.: 8:22-cv-01029-TPB-SPF**

**WELLS FARGO & COMPANY,**

     **Defendant.**
_____/

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Pursuant to Fed.R.Civ.P. 23, Named Plaintiffs, Audra Niski and Nelson Ferreira ("Plaintiffs),[1] respectfully move this Honorable Court to certify this case as a class action for the following class of similarly-situated individuals:

**National COBRA Putative Class:**

**All participants and beneficiaries in the Defendant's Health Plan from May 2018 through December 23, 2021, who were sent a COBRA notice by Defendant during the applicable statute of limitations, in the form attached as Composite Exhibit A, because of a "qualifying event" as determined by Defendant's records, who did not elect continuation coverage, excluding individuals who entered into arbitration agreements with Defendant.**

---

[1] The Parties have agreed to arbitrate Named Plaintiff Guy Blessinger's claims. Thus, he is neither a proposed Class Representative nor a class member.

## **<u>OVERVIEW OF MOTION</u>**

The record evidence in this case demonstrates the following: (1) the putative class is comprised of over 123,000 individuals; (2) each of those individuals received the same or similarly deficient COBRA notice and then lost insurance; (3) the Named Plaintiffs and class members have standing; (4) the class members are identifiable through the records of Defendant's COBRA Administrator, Willis Tower; and, finally, (5) Defendant's COBRA notice omits legally required information in violation of the law.  For these reasons, and as explained further below, this case is well-suited for class treatment.

As a threshold matter, it is worth noting that two prior Courts have certified for settlement purposes nationwide class in deficient COBRA notice cases involving a form <u>identical</u> to the form used here by Wells Fargo, including most recently in *Baja v. Costco Corp.*, Case No.: 0:21-cv-61210-AHS (S.D. Fla. Jan. 30, 2023) (Doc. 56)(granting final approval of deficient COBRA notice class action settlement involving 38,000+ class members), and again in *Green  v. FCA US, LLC*, Case No.: 2:20-cv-13079-GCS (E.D. Mich. Aug. 8, 2022 (Doc. 42) (granting final approval of deficient COBRA notice class action settlement involving 27,000+ class members).  And while there is no settlement in this case, application of the same Rule 23 factors that guided the federal courts in the *Baja* and *Green* cases warrant granting this Motion.

By way of a brief background on this case, Plaintiffs allege that Defendant's COBRA notice of rights to continued healthcare coverage violated 29 C.F.R. §

2590.606-4(b)(4) because it was not written to be understood by the average plan participant. Specifically, the COBRA notices are deficient because they contain misstatements of the law related to criminal and civil penalties and IRS penalties, which ultimately discouraged Plaintiffs and others from electing COBRA coverage. *Blessinger v. Wells Fargo & Co.*, No. 8:22-CV-1029-TPB-SPF, 2023 WL 145449, at *1 (M.D. Fla. Jan. 10, 2023). Thus, Wells Fargo's COBRA notice violates the law.

This case is ripe for class treatment due to the uniformity of Defendant's COBRA notice and mailing process. Rule 23(a) and Rule 23(b)(3) are both met. In terms of class size, the proposed class definition includes hundreds of thousands of people nationwide [numerosity]. Each putative class member received the same deficient COBRA notice and, as such, has a claim for statutory penalties [commonality]. The Named Plaintiffs' claim also stem from Defendant's same conduct, specifically the deficient COBRA notice [typicality]. Not only that, Named Plaintiffs are excellent class representatives who retained skilled class action lawyers and lack any conflicts with class members [adequacy].

Additionally, class treatment is warranted here because the resolution of whether Defendant's COBRA Notice complies with the law does not require individualized inquiries. Rather, it is an objective determination central to the resolution of all class members' claims [predominance]. Thousands of potential class members received the deficient Wells Fargo COBRA Notice at issue in this lawsuit. If Plaintiffs prevail it is likely that each individual class member would be entitled to damages under the law. For many class members, the claims will be

3

small in relation to the costs and expenses of litigating the claims, making it unlikely that the claims would be pursued individually. Consequently, the class mechanism is unquestionably superior [superiority].

Any challenge mounted by Defendant as to the content of its deficient COBRA notice would apply uniformly. The same is true for each of Defendant's core affirmative defenses.  Decisions by the Court on these issues are, therefore, appropriately made to the class members as a whole, as evidenced by certification under Rule 23 of a nearly identical nationwide class in *Vazquez v. Marriott Int'l, Inc.*, No. 817-cv-00116-MSS-MAP, 2018 WL 3860217, at *1 (M.D. Fla. Aug. 7, 2018). Notably, the Eleventh Circuit Court of Appeals rejected the *Vazquez* defendant's petition seeking permission to appeal the *Vazquez* class certification order (see Exhibit E), further demonstrating the propriety of class treatment.

Finally, Plaintiffs' proposed class definition mirrors no less than eleven (11) other class action cases certified under Rule 23 by Courts in the Middle District of Florida, including by this Court in *Bacs v. Capital One*.  Those cases include:

1. *Bacs, et al., v. Capital One Financial Corp*., M.D. Fla. Case No.: 8:21-cv-02852-TPB-TGW (M.D. Fla. Dec. 15, 2022)(Doc. 66) (Judge Barber granted preliminary approval of class in Rule 23 class of 15,927 people for settlement purposes in deficient Cobra notice case; additionally, Court found that "…Plaintiff and the Class Members have Article III standing.")

2. *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-00116-MSS-MAP, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018)(Judge Scriven certified nationwide Rule 23 class of 19,000 people in deficient COBRA notice case; notably, the Eleventh Circuit also rejected Marriott's Rule 23(f) petition challenging Article III standing);

3. *Valdivieso v. Cushman & Wakefield, Inc.*, Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018)(Doc. 92)(Judge Merryday certified nationwide Rule 23 class of 2,000+ people for settlement purposes in deficient COBRA notice case);

4. *Hicks v. Lockheed Martin Corporation*, Case No.: 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019)(Doc. 41)(Judge Moody certified nationwide Rule 23 class of 54,000+ people for settlement purposes in deficient COBRA notice case);

5. *Silberstein v. Petsmart, Inc.*, 8:19-cv-02800-SCB-AAS (M.D. Fla. Dec. 4, 2020)(Doc. 38) (Judge Bucklew certified nationwide Rule 23 class of 12,000+ people for settlement purposes in deficient COBRA notice case);

6. *Rigney et al v. Target Corporation*, Case No.: 8:19-cv-01432-MSS-JSS (M.D. Fla. Nov. 11, 2020) (Doc. 60) (Judge Scriven certified nationwide Rule 23 class of 92,000+ people for settlement purposes in deficient COBRA notice case);

7. *Morris, et al., v. US Foods, Inc.*, Case No.: 8:20-cv-00105-SDM-CPT (M.D. Fla. Nov. 5, 2021)(Doc. 56)(Judge Merryday certified nationwide Rule 23 class of 19,000+ people for settlement purposes in deficient COBRA notice case);

8. *Taylor v. Citizens Telecom Services Company, LLC*, Case No.: 8:20-cv-00509-CEH-CPT (M.D. Fla. Feb. 8, 2022) (Doc. 65) (Judge Honeywell certified nationwide Rule 23 class of 16,137 people for settlement purposes in deficient COBRA notice case);

9. *Kaintz v. The Goodman Group, Inc.*, 8:20-cv-02115-VMC-AAS (M.D. Fla. August 23, 2021) (Doc. 48) (Judge Covington certified nationwide Rule 23 class of 2,889 people for settlement purposes in deficient Cobra notice case appointed as class counsel in deficient Cobra notice case);

10. *McNamara v. Brenntag Mid-South, Inc.*, Case No.: 8:21-cv-00618-MSS-JSS (M.D. Fla. Feb. 17, 2022) (Doc. 32) (Judge Scriven certified nationwide Rule 23 class of 800+ people for settlement purposes in deficient Cobra notice case);

11.   *Carnegie v. FirstFleet Inc.*, M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019)(Doc. 63) (Judge Jung certified nationwide Rule 23 class of 2,008 people for settlement purposes in deficient Cobra notice case).

In each of these cases—collectively involving over 215,00 class members—Courts here in the Middle District of Florida found Rule 23(a) and Rule 23(b) satisfied and certified nationwide classes. Merely that many of the above cases were certified for settlement purposes has no bearing on standing, nor should that alter the Court's analysis here. Constitutional standing under Article III does not change merely because a case is settled. Based on these facts, coupled with the attached record evidence and authorities cited herein, Plaintiffs respectfully ask this Honorable Court to grant this Motion.

## BRIEF OVERVIEW OF COBRA

In terms of background on COBRA's notice requirements, the Eleventh Circuit has explained that defective or misleading COBRA notices do not comply with the law. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223 (11th Cir. 2002). In 2004 the Secretary of Labor promulgated a notice regulation, 29 C.F.R. § 2590.606–4. To facilitate compliance with these notice obligations, the DOL issued a Model COBRA Continuation Coverage Election Notice, included in the Appendix to 29 C.F.R. § 2590.606-4, that provides a "safe-harbor" if used. *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *2 (M.D. Fla. May 18, 2017).

A copy of the DOL's Model Notice is attached hereto as Exhibit C.  Employers are not required to use the Model Notice.  *See Id.*  However, if an employer acting as a plan administrator declines to use the DOL's Model Notice, and the employer also fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, it is subject to statutory monetary penalties.  *Id.*   Such is the case here.  Defendant declined to use the DOL's Model Notice.  Defendant's COBRA notice violates the law.  As a result, and due to the uniformity of Defendant's actions and the Cobra notice utilized, this case is well-suited for class treatment.

## SUPPORTING FACTS

1.    Both Plaintiffs are former long-term employees of Wells Fargo. Specifically, Named Plaintiff Niski worked for Wells Fargo from May 2009 until August 17, 2019. (*See* Defendant's Answer, Doc. 38, ¶ 58).  Similarly, Named Plaintiff Ferreira worked for Wells Fargo from May of 2009 through April 29, 2019. (*See* Defendant's Answer, Doc. 38, ¶ 54).

2.    Both Named Plaintiffs participated in multiple health/wellness plans offered to Wells Fargo's employees and their family members.  Named Plaintiff Ferreira and his family members participated in Wells Fargo's health insurance plan, dental plan, and vision plan.  (Doc. 20-3, p. 5; *see also* Composite Exhibit A, copies of the Named Plaintiffs' COBRA notices).

3.    Likewise, Named Plaintiff Niski participated in Wells Fargo's health insurance plan, dental plan, and vision plan.  (Doc. 20-2, p. 5; *see also* Composite Exhibit A, copies of the Named Plaintiffs' COBRA notices).

7

4.     As a result of losing their jobs at Wells Fargo, the Named Plaintiffs both experienced a "qualifying event" as defined by ERISA, entitling them to notification of their rights under COBRA.[2] (*See* Composite Exhibit A, copies of the Named Plaintiffs' COBRA notices); (*see also* Cunningham Depo., p. 20, lines 5 – 24).

5.     Defendant's COBRA Administrator, Willis Tower, then mailed the Named Plaintiffs COBRA notices.   (Exhibit B, Sworn Declaration from Willis Tower, ¶¶ 13-14).  Those notices are deficient as a matter of law.  They are attached as Composite Exhibit A.

6.     Importantly for purposes of class certification, during the class period Wells Fargo relied upon a uniform process to notify of their rights to continuation coverage under COBRA that is applied on a national basis.  (Cunningham Depo., p. 56, line 19 – p. 57, line 17).

7.     In fact, Willis Tower has served as Wells Fargo's COBRA administrator since 2016.  (Exhibit B, Sworn Declaration from Willis Tower, ¶ 5).

8.     During the class period on a weekly basis Wells Fargo provided to its COBRA Administrator, Willis Tower, a data file that was then loaded into Willis Tower's "BenefitConnect system," from which qualifying events were detected and transmitted to Willis Tower's COBRA system.  (Exhibit B, Sworn Declaration from Willis Tower, ¶ 10).

---

[2] In fact, Wells Fargo offers COBRA continuation coverage to everyone whose employment at Wells Fargo ends for any reason. (Cunningham Depo., p. 66, lines 1-7).  Unlike some other large employers, gross misconduct is not grounds for exclusion.  *Id*.

9.     After qualifying events were identified and processed in the BenefitConnect COBRA system, Willis Tower's "BenefitConnect system" cued up a COBRA notice, which was generated and then mailed to the former Wells Fargo employee.   (Exhibit B, Sworn Declaration from Willis Tower, ¶ 10).

10.     As demonstrated by the attached Sworn Declaration from Defendant's COBRA administrator, Willis Tower, the same or substantially similar COBRA form was used by Wells Fargo May 2018 and December 23, 2021.  (Exhibit B, Sworn Declaration from Willis Tower, ¶¶ 13-14).  During that period, the template COBRA Notice Willis Tower sent to Wells Fargo's employees included the "Criminal or Civil Penalty Warning" that Plaintiffs are challenging in this case. (Exhibit B, Sworn Declaration from Willis Tower, ¶ 12).

11.     According to the sworn deposition testimony from Wells Fargo's corporate representative, the same COBRA form was sent to at least 145,00 people. (Cunningham Depo., p. 60, line 19 – p. 61, line 5); (*see also* Exhibit B, Sworn Declaration from Willis Tower, ¶ 15).  At least 123,000 of those individuals meet the class definition because, according to Defendant's records, they did not elect COBRA continuation coverage.

12.     Importantly, the COBRA notices sent out on behalf of Wells Fargo to the class members are meaningfully identical to the notices sent to Plaintiffs (*see* Composite Exhibit A) because the notices included the "Criminal or Civil Penalty Warning" that Plaintiffs are challenging in this case. (Exhibit B, Sworn Declaration from Willis Tower, ¶ 12).  Whether inclusion of this language violates the law, or

not, is a question that can be universally answered as to all class members, making this a quintessential case for class treatment.

13.     Not only that, the information needed to identify the class members is readily ascertainable.  (Cunningham Depo., p. 68, line 13 – p. 69, line 25).  In fact, the last known mailing addresses for every class member from the records of its COBRA administrator, Willis Tower.  (Cunningham Depo., p. 68, line 13 – p. 69, line 25).

14.     In terms of standing, the Named Plaintiffs and Class Members each have standing by virtue of the deficient COBRA notice form they received coupled with their subsequent loss of insurance.  (Ferreira Decl., pp. 3, ¶¶ 13-16); (Niski Decl., pp. 3, ¶¶ 13-17).

15.     Additionally on the issue of standing, Named Plaintiff Ferreira incurred out-of-pocket expenses for medical related coverage because of Defendant's deficient COBRA notice.  (Ferreira Decl., pp. 3-4, ¶¶ 13-18); (*see also* Composite Exhibit D, Ferreira Interrogatory Responses, #4).  Specifically, he incurred approximately $100 to Dr. Brian Johnson for a dermatology bill, $500 to Gulfcoast Medical family practice for checkup, and another $100 bill for a consultation for a vasectomy, during the Relevant Time Period.  (Ferreira Decl., p. 3, ¶ 17); (*see also* Composite Exhibit D, Ferreira Interrogatory Responses, #4).

16.     In fact, Named Plaintiff Ferreira was scheduled for a medical procedure with a urologist in March 2019 and discovered his insurance had been cancelled while he was in the lobby waiting for his pre-op appointment. (Ferreira

Decl., p. 3, ¶ 18); (*see also* Composite Exhibit D, Ferreira Interrogatory Responses, #4).  As a result, Named Plaintiff Ferreira was forced to cancel this critical medical procedure due to lack of insurance.  (*Id.*).

17.    Named Plaintiff Niski encountered similar issues. (Niski Decl., pp. 3-4, ¶¶ 13-17); (*see also* Composite Exhibit D, Niski Interrogatory Responses, #4).  For example, in June of 2019, before Named Plaintiff Niski lost her health insurance through Wells Fargo, she had a dual surgery at Trinity Hospital during which she had a hysterectomy and tumor removed. (Niski Decl., p. 3, ¶ 17); (*see also* Composite Exhibit D, Niski Interrogatory Responses, #4).  As a result of these major surgeries, after she lost her Wells Fargo insurance, Plaintiff saw multiple practitioners following her surgery through the end of the 2019 for which she incurred between $4,000 and $5,000 in out-of-pocket expenses.  (Niski Decl., p. 3, ¶ 17); (*see also* Composite Exhibit D, Niski Interrogatory Responses, #4).  At least some of those expenses were incurred by Plaintiff after she lost her insurance through Wells Fargo but before she got covered under another health plan.  (Niski Decl., p. 3, ¶ 17); (*see also* Composite Exhibit D, Niski Response, # 4).

18.    The record evidence in this case demonstrates that class treatment is warranted.  Plaintiffs respectfully ask that this Honorable Court grant this Motion.

## **MEMORANDUM OF LAW**

### A.    **Legal Standard.**

According to the Eleventh Circuit, "the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal

Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Plaintiffs respectfully submit they satisfied both Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3). Thus, Plaintiffs respectfully ask the Court grant this Motion.

## B.    **Standing**.

A threshold requirement of class certification is that the named plaintiff is part of the proposed class. To have "class representative standing," a class representative must ... be part of the class and possess the same interest and suffer the same injury as the class members."[3] Named Plaintiffs Audra Niski and Nelson Ferreira are unquestionably part of the class and possess the same interest and suffered the same injury as the class members.  To establish Article III standing, a plaintiff need only show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021).

To be sure, both the Named Plaintiffs and the class members all received the same, or a substantially similar, deficient COBRA form.  They also all lost their insurance thereafter.  As a result, Named Plaintiffs Audra Niski and Nelson Ferreira—as well as each class member—suffered a concrete, particularized injury caused by Defendant which is likely to be redressed by the judicial relief sought

---

[3] *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (quotation marks omitted); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

here.  Standing is satisfied.  Indeed, as the Court explained recently in another deficient COBRA notice case, "Plaintiffs, however, allege that they lost their insurance coverage due to the deficiency in the notice. Plaintiffs also allege that they incurred significant medical costs due to the loss of insurance. The Court finds that these allegations are sufficient to establish the causation requirement for Article III standing."  *Bacs, et al., v. Capital One Financial Corp.*, M.D. Fla. Case No.: 8:21-cv-02852-TPB-TGW (M.D. Fla. Dec. 15, 2022)(Doc. 52, p. 4).

The Plaintiffs here have standing for the same reason the *Bacs* plaintiffs had standing. The well-pleaded allegations from Plaintiffs' Amended Complaint, specifically paragraphs 14 – 17 from the Supporting Facts section of this brief (incorporated here by reference for brevity), coupled with the attached Sworn Declarations from Named Plaintiffs Audra Niski and Nelson Ferreira, along with the attached sworn interrogatory responses from each of the Named Plaintiffs, individually and collectively establish the Named Plaintiffs' standing.  *See also Vazquez v. Marriott Int'l, Inc., No.* 817CV00116MSSMAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (granting motion for class certification and holding that, "Plaintiff has standing because she alleges facts that present questions of whether: (1) Defendant provided adequate COBRA notification and (2) the failure to receive adequate COBRA notice resulted in unpaid medical bills."); *see also Baja v. Costco Corp.*, Case No.: 0:21-cv-61210-AHS (S.D. Fla. Jan. 30, 2023) (Doc. 56)(granting final approval of deficient COBRA notice class action settlement

involving same form used by Wells Fargo and finding, "...both the Class Representative and Class Members have sufficient Article III standing.").

Although unnecessary at stage, the class members also each have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, n.4 (2021)("We do not address the distinct question whether every class member must demonstrate standing *before* a court certifies a class.") Proposed class members are former employees of Wells Fargo who have been identified by objective criteria—specifically because they were all sent a deficient COBRA notice by Defendant's COBRA administrator, Willis Tower, and then lost their health insurance.  Thus, they have standing for the same reason that the Named Plaintiffs have standing.

Although Wells Fargo will likely argue that the class definition is somehow unworkable, or even that the class members lack the requisite standing because Plaintiffs' proposed class definition may "include[] individuals who experienced no impact, this contention points to whether questions of individual damages predominate, not whether the class is adequately defined and ascertainable." *Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (citing to *Speedway*, No. 8:16-CV-03280, slip op. at *3 (M.D. Fla. May 31, 2018) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

Defendant may also argue class certification is inappropriate because it requires an individualized inquiry into whether each putative class member

14

suffered the same concrete injury attributable to the same causation.  However, if raised by Wells Fargo, such standing-related arguments should be rejected.

**_First_**, the Named Plaintiffs and every class member all suffered the same concrete injury in the form of a deficient COBRA notice form resulting in the loss of their health insurance.  *See, e.g., Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (same facts sufficiently established class representative's Article III standing in deficient COBRA notice case under Rule 23).[4]  These facts alone satisfy the first two standing elements set forth in *Ramirez*.  The third element, redressability, is also satisfied by the Named Plaintiffs and the class members by virtue of the statutory damages and equitable relief they seek pursuant to 29 U.S.C. § 1132. *See, e.g., Bryant v. Compass Grp. USA*, Inc., 958 F.3d 617, 621 (7th Cir. 2020) ("the prospect of statutory damages shows that such an injury is redressable").

**_Second_**, even if the Court, in its sole discretion, chooses to examine class members' injuries and the corresponding penalties individually, "this still does not defeat class certification."  *Vazquez*, 2018 WL 3860217, at *7 (M.D. Fla. Aug. 7, 2018).  As the Supreme Court recently noted, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important

---

[4] *See also DeLaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251, at *2 (M.D. Fla. Mar. 20, 2018), ("Plaintiff contends that the Second Amended Complaint alleges...economic injuries sustained through her temporary loss of insurance coverage and the unpaid medical bills incurred as a result of her cancelled surgery. The Court finds that Plaintiff has met her burden of pleading an injury in fact sufficient to establish standing.")

matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.*[5]

**_Third_**, the COBRA notice provisions Defendant violated do not turn on whether a given employee had a "need" for continuation coverage. So, standing arguments suggesting class members who did not want or could not afford Cobra coverage somehow lack standing fail as a matter of law. Here, the proposed class is comprised of former Wells Fargo Health Plan participants and beneficiaries who were enrolled in the Wells Fargo Health Plan and who were not provided the legally required notice of COBRA continuation coverage. "Their actual need for continuation coverage (or lack thereof) has no bearing on their membership in the class." *Bhattacharya v. Capgemini N. Am., Inc.*, 324 F.R.D. 353, 361–62 (N.D. Ill. 2018).

**_Finally_**, Plaintiffs acknowledge that in *Drazen v. Pinto*, No. 21-10199, 2022 WL 2963470 (11th Cir. July 27, 2022), the Eleventh Circuit held that a definition of settlement class was defective by including class members who lacked Article III standing because they had not suffered an injury in fact under circuit precedent. However, there is no issue with the proposed class definition in this case under *Drazen*. Unlike the *Drazen* class members who lacked standing under the recent Eleventh Circuit's decision in *Salcedo v. Hanna* 936 F.3d 1162 (11th Cir. 2019)

---

[5] (*citing Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("the presence of individualized damages issues does not prevent a finding that the common issues in the class predominate.")

(holding that a plaintiff who received only a single text message had not suffered an injury in fact), in this case every class member suffered an injury-in-fact; namely, they all received a Cobra notice that violated the law *and* they all lost their health insurance as a result.   Not only that, this is not a settlement class.  Since certification here precedes the rewarding of any relief, Plaintiffs "need not prove that every member of the proposed class has Article III standing." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).

Here, Defendant provided a deficient COBRA notice to the entire putative class, a breach of its fiduciary duty and C.F.R. § 2590.606-4(b)(4).  No additional harm is required to establish Art. III standing. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996)("[W]e recognize that these fiduciary duties draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment.");  *Romano v. John Hancock Life Ins. Co. (USA)*, 19-21147-CIV, 2022 WL 138663, at *17 (S.D. Fla. Jan. 14, 2022) )("reliance is not an element plaintiffs must prove to establish a breach of fiduciary duty, which if proved would entitle the Plan to recovery.")(citation omitted); *Bruhl v. Price Waterhouse Coopers Intl.*, 257 F.R.D. 684, 696 (S.D. Fla. 2008)(reliance of class presumed when every class member received the same message from defendants).[6]

**<u>In sum</u>**, "the Court need not decide whether all putative class members must have standing as the Court is empowered to amend an over-inclusive class

---

[6] While Plaintiffs are not presently seeking relief on behalf of the Plan, the concept still applies because they are seeking damages on behalf of a class harmed by a regulation based on common law claims.

definition; [rather,] an over-inclusive class may be remedied " 'by refining the class definition rather than by flatly denying class certification on that basis.' " *A & M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 695-96 (S.D. Fla. 2017) (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012) ).

## C.   Ascertainability.

Not only is the class ascertainable, through the records of Willis Tower, Defendant has already identified 123,000+ class members and their last known mailing addresses.  (*See* Exhibit B, Willis Tower Decl., ¶ 15).

## D.   Plaintiffs Satisfied All of the Rule 23 (a) Class Certification Requirements.

### 1.   The Proposed Class Is Sufficiently Numerous.

The first requirement under Rule 23(a) is that the putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The class is comprised of more than 123,000 persons.  Numerosity is satisfied.

### 2.   Plaintiff Has Presented Common Questions of Fact and Law.

"Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F. 3d 807, 811 (11th Cir. 2011); *Cooper v. Southern Company*, 390 F. 3d 695, 714 (11th Cir. 2004.  Proof of commonality is a "relatively light burden." *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010).

Plaintiffs' Amended Complaint alleges several common questions. Just by way of example, Plaintiffs challenge: (1) whether Defendant violated COBRA's notice requirements; and, (2) whether and to what extent statutory penalties are appropriate. Plaintiffs' putative class only includes individuals who were sent a COBRA Notice, as substantiated by Defendant's evidence, and who did not elect coverage. Thus, each member of the purported class did receive, or should have received, the allegedly inadequate Notice and as such, has a claim, for statutory penalties, against the Defendant for the failure to provide adequate Notice. Consequently, as Judge Scriven held in *Vazquez,* Plaintiffs have alleged, as a threshold matter, common questions of fact concerning whether the COBRA Notice complies with the law. *See, e.g., Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at \*3 (M.D. Fla. Aug. 7, 2018); *see also Pierce v. Visteon Corp.*, No. 1:05-CV-1325-LJM-VSS, 2006 WL 6667384, at \*3 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class").

An award of damages to one putative class member for a violation of COBRA justifies the award of damages to the remaining class members under the same legal theory, subject to the same defenses. Even if the award of damages were to vary among class members, the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F. 3d 1248, 1261 (11th Cir. 2003).

While it is true that the award of damages may vary among class members based on the date of their termination, the *per diem* statutory penalty to be decided by the Court should probably be the same for all class members. The Defendant's conduct towards the proposed class is uniform. In the present case, differences in individual damages will be minimal. The only difference will be the calculations, based on the number of days, which is merely mechanical. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1310 (11th Cir. 2008).

The applicable statute of limitations is four years. *Blaikie v. Rsight, Inc.*, No. 8:09-CV-1770-T-26MAP, 2011 WL 5834751, at *7 (M.D. Fla. Nov. 21, 2011). The fact that different statutes of limitations may apply does not defeat typicality or class certification generally. "[C]ourts consistently hold, however, that the statute of limitations does not bar class certification, even when individual issues are certain to exist." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 680 (S.D. Fla. 2015) (citing to *La Grasta v. First Union Sec., Inc.*, 2005 WL 1875469, *5–6, *9–10 2005 U.S. Dist. LEXIS 20207, at *19–20, *30 (M.D. Fla. 2005). The outcome here should be no different. If there is any reason to differentiate among class members, that can best be decided in connection with the presentation of all facts in a single trial.   Commonality is met.

### 3.   The Claims Presented by the Proposed Class Representatives Are Typical of the Claims of the Class.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality

measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008).

In this case, the legal theory underlying the claims of the putative class members is identical to the Named Plaintiffs' claims.  Here, Plaintiffs' claims are typical of the putative class they seek to represent, as they allege to have received the same COBRA notice as the putative class members and, thus, their claims issue stem from the same COBRA election notice (attached as Composite Exhibit A).

Defendant has identified over 123,000 people who fit the class definition, which tracks the same class definition certified in *Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018), along with the class definitions from the *Valdivieso*, *Hicks*, *Silberstein*, *Rigney*, *Morris*, *Taylor*, *Kaintz*, *McNamara*, and *Carnegie* cases cited *supra*.[7]  Accordingly, Rule 23(a)(3) is also satisfied. *See, e.g., Pierce*, 2006 WL 6667384, at *4 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide

---

[7] When responding to this Motion Defendant will likely cite to an inapposite Report Recommendation (not an Order) entered in *Bryant v. Wal-Mart Stores, Inc.*, No. 16- 24818-CIV, 2020 WL 4333452, at *1 (S.D. Fla. July 15, 2020) ("the *Bryant* R & R")(holding plaintiff lacked standing at the class-certification stage because plaintiff "had already secured coverage under her domestic partner's Plan coverage by the time she received her COBRA election notice."). However, this case is easily and readily distinguishable from the *Bryant* R & R. Unlike here, in *Bryant*  one of the plaintiffs suffered no lapse of coverage, nor paid increased insurance premiums, while others testified they had no plans to elect COBRA due to the cost. That is simply not what happened in this case.  As indicated by the attached Sworn Declarations and interrogatory responses, both of the Named Plaintiffs lost insurance and incurred medical bills because of Defendant's COBRA notice. Such facts distinguish this case from the *Bryant* R & R, making it inapplicable here.  This case is much closer, both procedurally and factually, to *Vazquez v. Marriott Int'l, Inc.,* No. 817CV00116MSSMAP, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018).

COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory.")

Individual variations among class members' claims with respect to the extent of their damages do not defeat typicality for purposes of class certification. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Differences in the amount of damages between the class representative and other class members does not affect typicality."). Simply put, there is a sufficient nexus between the claims of the Named Plaintiffs and those of the class members such that typicality is satisfied.

Defendant may argue that the Named Plaintiffs' purported individualized lack of understanding of the COBRA Notice somehow defeats typicality. However, whether a COBRA Notice provides adequate information is not based on an individual's understanding of the notice but, rather, an objective determination of whether the mailer complies with the letter of the statute. *Rodriguez v. Int'l Coll. of Bus. And Tech.*, 364 F.Supp.2d 40, 46 (D.P.R. 2005).

### 4. <u>The Proposed Class Representatives Will Fairly and Adequately Protect and Represent the Interests of the Class.</u>

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F. 3d 1181, 1189 (11th Cir. 2003).

According to the Supreme Court, the central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). The proposed Class Representatives, Audra Niski and Nelson Ferreira, can and will fairly represent the interests of the Class and have no conflicts with or antagonistic to the Class. (*See* Niski Decl., ¶ 6); (*see also* Ferreira Decl., ¶ 6). Both answered extensive written discovery propounded by Defendant. Both have agreed to be deposed. Simply put, both of the Named Plaintiffs, Audra Niski and Nelson Ferreira, have represented the class well thus far—and they will continue doing so.

Lastly, the proposed Class Representatives retained the undersigned counsel who possess the requisite experience litigating class actions, including employee rights' claims in Federal court. Copies of the undersigned Declarations identifying their extensive class action and litigation history are attached hereto. (*See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek). Plaintiffs respectfully submit that adequacy is satisfied.

**E.** **Plaintiffs Have Also Satisfied Rule 23(b)(3).**

Once the requirements of Rule 23(a) have been met, Plaintiffs must then satisfy at least one of the alternative requirements of Rule 23(b) for the proposed class to be certified. Plaintiffs rely on Rule 23(b)(3).

**1.** **Common Issues Predominate.**

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. Though not a determination on the merits, a Rule

23

23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The central issues revolve around a standardized COBRA notice that was common to all class members, whether that notice was lawful, and whether Defendant should be required to pay statutory penalties for utilizing that notice.

In other, similar cases involving COBRA notices, courts have found that common issues predominated. *See, e.g., Slipchenko v. Brunel Energy, Inc.*, 2013 WL 4677918, at *13 (S.D. Tex. Aug. 30, 2013); *Pierce*, 2006 WL 6667384, at *5. Merely that a few minor differences may exist between COBRA notices utilized by Wells Fargo during the class period, mainly with respect to the COBRA form's grammar and formatting, does nothing to interfere with the fact that in this case, which rests on the deficient COBRA election notice sent out by Defendant, the common questions identified above unquestionably predominate over any individualized issues, making class treatment appropriate.

When responding to this Motion, Defendant will likely argue that common questions do not predominate because individualized proof of the motivations of thousands of putative class members is required to determine whether, and to what extent, Defendant is liable. However, the Court should reject any such arguments outright. As Judge Scriven explained in *Vazquez*: "[t]he resolution of whether the COBRA Notice complied with the law, however, does not break into individualized inquiries; rather, it is an objective determination and central to the

resolution of any claims of any purported class members. Thus, the question of individual class members' motivations is irrelevant as to Defendant's liability."[8] This Court should follow *Vazquez*. Predominance is established.

### 2. **A Class Action is Superior to Adjudicate This Claim.**

Finally, superiority under Rule 23(b)(3) is established. "The second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Here the superiority requirement of Rule 23(b)(3) is easily satisfied. There is little individual interest in individual control over this lawsuit. Members of the Class have not filed individual lawsuits against the Defendant. Moreover, the manageability of handling thousands of COBRA claims against Defendant would be facilitated by the class action vehicle. Superiority is satisfied.

**WHEREFORE,** Plaintiffs respectfully move this Honorable Court to certify the "National COBRA Putative Class" defined above; appoint Named Plaintiffs as Class Representatives; appoint undersigned counsel, Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek of Wenzel Fenton Cabassa, P.A., as class counsel; and allow them to notify the Class members via a Court-approved notice.

---

[8]*Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *6 (M.D. Fla. Aug. 7, 2018).

Dated this 31st day of January, 2023.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL, ESQ.**
Florida Bar Number: 37061
**LUIS A. CABASSA, ESQ.**
Florida Bar Number: 053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 31st day of January, 2023, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**

26