UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUY BLESSINGER, AUDRA NISKI,
and NELSON FERREIRA,
individually and on behalf of all
others similarly-situated,

      Plaintiffs,

v.                                                                                     Case No. 8:22-cv-1029-TPB-SPF

WELLS FARGO & COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

In this putative class action, Plaintiffs Audra Niski and Nelson Ferreira, former employees of Defendant Wells Fargo & Company ("Wells Fargo"), allege Wells Fargo sent defective COBRA notices to them and other class members that dissuaded them from electing continued coverage under the company's health plan (*see* Doc. 1). After discovery and motion practice, the parties settled Plaintiffs' claims at mediation (*see* Doc. 55). Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 58, the "Preliminary Approval Motion"). The undersigned recommends the motion be granted in part and denied in part.

## I.   BACKGROUND

### A.  The Complaint

Plaintiffs[1] Audra Niski and Nelson Ferreira worked for Wells Fargo and participated in the company's group health plan (Doc. 1).  After separate qualifying events – Niski was terminated and Ferreira resigned – the company was obligated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161-68, to notify them of their right to continuing insurance coverage through Wells Fargo's health plan (*Id.*).  Plaintiffs filed a one-count class action Complaint in May 2022, contending Defendant's COBRA notice was not written in a manner calculated to be understood by the average plan participant, contained inaccurate and misleading threats of criminal penalties and fines, and failed to provide the contact information of a plan administrator, in violation of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4 (as enforced through 29 U.S.C. § 1132) (*Id.*).  According to Plaintiffs, because Defendant's COBRA notice was defective, they did not elect COBRA continuation coverage, suffered the loss of health insurance benefits, and incurred out of pocket medical expenses (*Id.* at ¶¶ 43-48).

### B.  Procedural History

Wells Fargo moved to dismiss Plaintiffs' Complaint for failure to state a claim in July 2022 (Doc. 20).  Plaintiffs timely responded (Doc. 24).  Then, in November 2022, with the motion to dismiss pending, the parties jointly stipulated to the dismissal with prejudice of

---

[1]  Although Guy Blessinger is a named Plaintiff, he is neither a proposed class representative nor a class member because he signed a mutual arbitration agreement with Wells Fargo (Doc. 58 at 1, n.1).

Plaintiffs' allegation that Defendant failed to identify a plan administrator (Doc. 32); the District Judge granted in part and denied in part Defendant's motion to dismiss to reflect the parties' stipulation (Doc. 37).

Meanwhile, Defendant answered the Complaint (Doc. 38), Plaintiffs moved for Class Certification (Doc. 40), and the parties engaged in discovery. Plaintiffs represent they served class-wide discovery on Wells Fargo (requests for production, requests for admission, and interrogatories), deposed Wells Fargo's corporate representative under Rule 30(b)(6), and obtained a sworn declaration for class certification purposes from Defendant's COBRA administrator Willis Towers Watson (*see* Doc. 58 at 4). In all, Plaintiffs estimate they reviewed approximately 4,000 documents obtained through discovery. As for Defendant, it propounded written discovery on Plaintiffs, deposed both named Plaintiffs, and identified an expert (*Id.*). The parties also negotiated and obtained a stipulated protective order regarding the production and disclosure of confidential information (Docs. 47-48).

In May 2023, before a ruling on Plaintiffs' class certification motion, the parties successfully mediated (*see* Doc. 55). After the parties informed the Court of their settlement, the District Judge directed the parties to file a Preliminary Approval Motion by July 18, 2023 (Doc. 56). Plaintiffs did so (Doc. 58). The District Judge referred the Motion to the undersigned (Doc. 59) and denied Plaintiffs' motion for class certification as moot, given the settlement (Docs. 40, 60). At this juncture, Plaintiffs ask the Court to preliminarily approve

the Settlement[2], preliminarily certify the Settlement Class, approve the Notices of Settlement

to be mailed to Settlement Class Members, and schedule a Final Approval Hearing.[3]

### C. The Settlement

The Settlement defines the Settlement Class as:

> [A]ll participants and beneficiaries in the Wells Fargo & Company Health Plan who were sent the COBRA notice by or on behalf of Defendant at any time during the Class Period who did not elect COBRA Coverage, excluding individuals who entered into arbitration agreements with Defendant. The Settlement Class, consisting of approximately 50,000 members, is to be certified pursuant to Fed. R. Civ. P. 23 for settlement purposes only.

(Doc. 58-2 at ¶ 32). The Settlement resolves all claims in this action and requires Wells Fargo

to deposit one million dollars ($1,000,000.00) into a Qualified Settlement Fund within 14

days of the Effective Date (*Id*. at ¶ 23), which the Settlement defines as 14 days after entry of

the Court's Final Approval Order (if other preconditions are met) (*Id*. at ¶¶ 19, 37).

Under the Settlement, the Net Settlement Proceeds[4] will be distributed to eligible

Settlement Class Members who submit valid and timely claims (*Id*. at ¶ 38). "[E]ach

---

[2] The definitions in Section II of the Settlement are incorporated into this Order, and capitalized terms shall have the meanings assigned to them in the Settlement. (*See* Doc. 58-2 at ¶¶ 6-35).

[3] The exhibits to the Preliminary Approval Motion are: Settlement Agreement and Release; Proposed Order approving the Settlement; Proposed Email Notice; Proposed Short Form Notice; Proposed Long Form Notice; and Declarations of Class Counsel Brandon Hill, Luis Cabassa, and Marc Edelman (Docs. 58-1 – 58-8).

[4] The Settlement defines "Net Settlement Proceeds" as "the amount of money remaining after the Gross Settlement is reduced by the following amounts, none of which Defendant opposes: (a) any General Release Payment of up to $7,500.00 for each Named Plaintiff; (b) any award of Class Counsel's attorneys' fees up to 30% of the total Gross Settlement (*i.e.*, $300,000), plus reasonable litigation costs (up to $10,772.94); and (c) Court-approved costs of the settlement administration process by the Settlement Administrator, including but not limited to

4

Settlement Class Member who submits a Settlement Claim will receive a check out of the Settlement Account for up to Twenty Dollars and Zero Cents ($20.00)." (*Id.* at ¶ 38). The deadline for Settlement Class Members to submit a Settlement Claim is 60 days after a Court-approved Notice of Settlement is mailed to them (*Id.* at ¶ 16).  The parties have drafted proposed Notices of Settlement (including an E-mail Notice, Short Form Notice, and Long Form Notice) (*Id.* at ¶ 25).  Settlement Class Members who wish to do so may opt out or object to the Settlement (*Id.* at ¶¶ 53-54).  The parties will engage a Settlement Administrator to mail the Notices to Settlement Class Members and to publish notice on a case-specific website, among other administrative tasks (*Id.* at ¶¶ 49-52).

The Settlement Administrator's expenses (deducted from the Settlement Account) are estimated at $61,000.00 (*Id.* at ¶ 45).  Class Counsel for the Settlement Class will seek fees not to exceed 30% of the Gross Settlement (or $300,000.00) and costs not to exceed $10,772.94 (*Id.* at ¶ 43).  The parties also agree that Named Plaintiffs Audra Niski and Nelson Ferreira may seek approval of $7,500.00 General Release Payments to be paid from the Settlement Account (*Id.* at ¶ 48).  If Net Settlement Proceeds remain after subtracting the total value of the checks the Settlement Administrator cuts for Settlement Claims, attorneys' fees and costs, Named Plaintiffs' General Release Payments, and the costs of class administration, this amount will "revert as directed by Defendant." (*Id.* at ¶ 40).  If any Settlement Class Members who filed claims do not cash their checks in time, those amounts will be awarded to Bay Area Legal Services as a *cy pres* award (*Id.* at ¶ 41).

---

distribution of the Notices of Settlement to Settlement Class Members (estimated to be $61,000)." (*Id.* at ¶ 24).

## II.    APPLICABLE LAW

When deciding a motion for preliminary approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b).  *Diakos v. HSS Sys., LLC*, 137 F.Supp.3d 1300, 1306 (S.D. Fla. 2015).  Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b).  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019).  Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)-(4).  Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Eleventh Circuit also requires that the class representative has standing to sue and that the proposed class is adequately defined and clearly ascertainable.  *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To do so, the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  And the Eleventh Circuit "instruct[s] district courts to consider several additional factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). They are:

there was no fraud or collusion in arriving at the settlement and … the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (the "*Bennett* factors").

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citations omitted) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."); *see also O'Connor v. Worthington PJ, Inc.*, No. 2:16-cv-608-FtM-99MRM, 2017 WL 6762436, at *3 (M.D. Fla. Dec. 13, 2017).

## III.    CLASS CERTIFICATION REQUIREMENTS

Although the parties settled before the Court certified this case as a class action, the Court must still determine whether the proposed Settlement Class satisfies Rule 23's certification requirements.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21

(1997).  "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class – *i.e.,* all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied – except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial."  *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011).  The Court must be satisfied that the class representative has standing to sue and that the proposed class "is 'adequately defined and clearly ascertainable.'" *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *Prado-Steiman ex rel Prado*, 221 F.3d at 1279.

### A. Standing

"[A]ny analysis of class certification must begin with the issue of standing."  *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).  To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).  "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it."  *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc).  At the pleading stage, "general factual allegations of injury can suffice," if they "plausibly and clearly allege a concrete injury."  *Id.* (citations and quotations omitted). Additionally, a named plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members" to have standing to represent that class.  *Prado-*

*Steiman ex rel Prado*, 221 F.3d at 1279 (citation omitted); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008).

Violating a statutory right to information can create an injury sufficient to confer standing in some contexts. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1003-04 (11th Cir. 2020) (discussing applications of the "informational injury" theory of standing); *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (collecting cases). However, "a bare procedural violation [of a statute], divorced from any concrete harm," is not enough to establish standing. *Spokeo*, 136 S. Ct. at 1549. Instead, a plaintiff must show that the statutory violation either led to actual tangible or intangible harm or "posed a material risk of harm to the plaintiff." *Godiva*, 979 F.3d at 928. And in class actions, the court must still ascertain if the named plaintiffs have standing even if the parties have settled. *Id.* at 924 (noting that the requirement of standing "applies equally in the class action setting" and that a district court is "'powerless to approve a proposed class settlement' if 'no named plaintiff has standing.'") (*quoting Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019)).

Regarding COBRA informational notices like the one Plaintiffs challenge here, courts recognize that one of Congress's goals in mandating such disclosures was to promote access to health insurance coverage among people recently terminated from employment. *See Scott v. Suncoast Beverage*, 295 F.3d 1223, 1230 (11th Cir. 2002). Given "the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay[,]" continued health coverage was of particular concern to Congress. *Morris v. US Foods, Inc.*, No. 8:20-cv-105-SDM-CPT, 2021 WL 2954741, at *4 (M.D. Fla. May 17, 2021) (*citing* H.R. Rep. No. 99-

241 at 44 (1985), *reprinted in* 1986 U.S.C.C.A.N. 579, 622), *report and recommendation adopted*, 2021 WL 6125575 (M.D. Fla. Jul. 14, 2021).

Here, Plaintiffs Niski and Ferreira have adequately pleaded that Wells Fargo's notice was statutorily deficient and caused them to lose their health insurance and incur medical bills.  Both Plaintiffs allege that the defects in the notice hindered their ability to decide whether to elect COBRA continuation coverage, so they did not obtain such coverage and lost their health insurance (following their respective qualifying events) (*see* Doc. 1 at ¶¶ 42-48).  They allege they could not secure appropriate medical care and treatment and paid out-of-pocket for medical expenses (*Id.*).  Courts have found standing under similar circumstances.  *See Morris*, 2021 WL 2954741, at *4 (M.D. Fla. May 17, 2021) (collecting cases); *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-116-MSS-MAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (certifying class and finding plaintiff had standing because she alleged defendant sent inadequate COBRA notice that resulted in her unpaid medical bills); *cf. Carter v. Southwest Airlines Co.*, No. 8:20-cv-1381-T-02JSS, 2020 WL 7334504, at *4 (M.D. Fla. Dec. 14, 2020) (dismissing class action complaint without prejudice for lack of standing; "unclear how Plaintiff [who maintained health coverage during the relevant period] could be injured by a lack of information about COBRA during a period when she had no need to elect COBRA coverage.").

## B.  Rule 23(a) Requirements

### 1.  Numerosity

Under Rule 23(a)(1), a plaintiff must show the settlement class is so numerous that joinder is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  This requirement is "a generally low

hurdle" and "less than twenty-one is inadequate ... [and] more than forty is adequate..." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (internal quotations and citation omitted).   The parties submit that the Settlement Class consists of approximately 50,000 people (Doc. 58 at 9).   This number satisfies the numerosity requirement for settlement purposes.

### 2. Commonality

Rule 23(a)(2) requires a plaintiff to show "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A plaintiff must "demonstrate that the class members have suffered the same injury," and that "[t]heir claims . . . depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations and citation omitted).  A "common contention" is a contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350 (internal quotations and citation omitted).  Although the exact claim or statutory violation need not be the same for all class members, "there [must] be at least one issue whose resolution will affect all or a significant number of the putative class members."  *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014) (per curiam) (citation omitted).

Here, Niski and Ferreira assert that "[a]ll Settlement Class Members were participants or beneficiaries of the Plan, were sent copies of Defendant's allegedly deficient COBRA Notice, and did not elect COBRA continuation coverage following their receipt of the same purportedly inadequate notice." (Doc. 58 at 9-10).  The common questions of law among the proposed class members are: "(1) whether Defendant violated COBRA's notice requirements;

[and] (2) whether, and to what extent, statutory penalties are appropriate." (*Id.*). Resolving these issues will affect all (or close to all) of the putative class members; Rule 23(a)(2)'s commonality requirement is satisfied for settlement purposes. *See Morris*, 2021 WL 2954741, at *5; *Vazquez*, 2018 WL 3860217, at *3.

### 3. Typicality

Rule 23(a)(3) requires that a plaintiff's claims be typical of the claims of the settlement class. Fed. R. Civ. P. 23(a)(3). This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted). Class members' claims need not be identical to satisfy this requirement. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Instead, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Niski and Ferreira's claims are typical of the proposed Settlement Class because they concern the same purportedly inadequate COBRA Notice disseminated by Wells Fargo to all Settlement Class Members, arise from the same legal theories (*i.e.*, a statutory violation), and assert the same type of harm and entitlement to relief (Doc. 58 at 12-13). These allegations establish a sufficient nexus between Niski and Ferreira's claims and those of the class; the Settlement Class meets the typicality requirement. *See Morris*, 2021 WL 2954741, at *5; *Vazquez*, 2018 WL 3860217, at *4.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'"  *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

Niski and Ferreira are adequate representatives of the Settlement Class.  They have standing (discussed above), are members of the Settlement Class they seek to represent, and the Court is not aware of any antagonistic interests between Niski and Ferreira and the Settlement Class Members.  Likewise, the Court is satisfied that Attorneys Luis Cabassa and Brandon Hill of Wenzel Fenton Cabassa, P.A. and Marc Edelman of Morgan & Morgan, P.A. possess the qualifications and experience to undertake this class action litigation and serve as counsel for the Settlement Class.  *See* Docs. 58-6, -7, -8; *see also Dukes v. Air Canada*, No. 8:18-cv-2176-T-17JSS, 2019 WL 8358700, at *4 (M.D. Fla. Sept. 6, 2019) (finding adequacy of representation requirement where "Plaintiff and the Settlement Class seek redress of the same alleged wrong" and "Plaintiff's counsel understands the claims in this case and possesses class action experience").  Rule 23(a)(4)'s adequacy requirement is satisfied.

### C. Rule 23(b) Requirements

Next, the proposed class must fall into at least one of the three categories listed by Rule 23(b) as a prerequisite to class certification.  Niski and Ferreira rely on Rule 23(b)(3), which

requires the court to consider if: (a) "the questions of law or fact common to class members predominate over any questions affecting only individual class members;" and (b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (*See* Doc. 58 at 14).  Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

A predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods.*, 521 U.S. at 623.  To satisfy Rule 23(b)(3)'s predominance prong, a court must find that issues subject to generalized proof applicable to the class as a whole "predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted).  This calls for "a pragmatic assessment of the entire action and all the issues involved." *Cordoba*, 942 F.3d at 1274 (citation omitted). "'[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Id.* (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)).  Common issues will not predominate "'if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.*

As Plaintiffs state in their Preliminary Approval Motion, this case "derive[s] from a standardized COBRA Notice common to all Settlement Class Members.  The core inquiry is whether the COBRA Notice complied with applicable statutory requirements and accompanying regulations, and, if it didn't, whether statutory penalties are appropriate."

(Doc. 58 at 14).  This determination is central to resolving all putative class members' claims. And all members of the class allegedly received the same COBRA Notice, an allegation subject to generalized proof.  There are few, if any, individualized issues involved and no concern over individualized damages. Plaintiffs satisfy the predominance prong. *See Morris*, 2021 WL 2954741, at *6; *Valdez*, 2018 WL 3860217, at *6.

### 2.  Superiority

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Pertinent to the consideration of superiority are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, regarding the first factor, the parties anticipate a Settlement Class of approximately 50,000 people and estimate that each Settlement Class Member who submits a valid and timely claim will receive a $20.00 check.  Considering this modest amount, class members likely would not bring individual lawsuits.  The second and third factors also favor class certification – the parties represent that no other member of the proposed Settlement Class has brought any individual COBRA claims against Wells Fargo, and the Middle District of Florida is well-suited to either litigate this case or effect the nationwide settlement.  As to the fourth factor, the fact of settlement obviates the need to "inquire whether the case, if tried, would present intractable management problems, [since] the proposal is that there be no

15

trial." *Windsor*, 521 U.S. at 620 (citation omitted).  The alternative is the Court managing potentially thousands of individual claims for damages stemming from the same purportedly inadequate COBRA Notice, which is an inefficient use of judicial resources.  For purposes of class settlement, a class action is the superior method for adjudicating these claims.

### D. Adequately Defined and Clearly Ascertainable

Finally, a class must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  A plaintiff must show the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).[5]  The identification of "class members is administratively feasible when it is a management process that does not require much, if any, individual inquiry."  *Id.* (internal quotations omitted).

Here, Settlement Class Members can be ascertained by reference to objective criteria, which can be discerned in an administratively feasible fashion – Defendant anticipates it will take 10 days to identify all Settlement Class Members (*see* Doc. 58-2 at ¶ 49).  Additionally, the parties represent that the total class size of potential members is approximately 50,000 (*see* Doc. 58-2 at ¶ 32).  The Settlement Class is adequately defined and clearly ascertainable.

To recap, the Settlement Class satisfies Rule 23(a) and (b), the Named Plaintiffs have standing, and the putative class of approximately 50,000 people is adequately defined and

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority.  11th Cir. R. 36-2.

clearly ascertainable.  The Court recommends the Settlement Class be preliminarily certified for settlement.

## IV.   FAIRNESS OF THE AGREEMENT

With Rule 23 satisfied as to preliminary class certification, the Court segues into determining preliminarily if the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding *Bennett* factors.  At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."  *Morris*, 2021 WL 2954741, at *7 (*quoting* William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. Supp. 2020)).  In the end, courts have substantial discretion in approving a settlement agreement.  *Bennett*, 737 F.2d at 986.  In exercising this discretion, courts consider the "strong judicial policy favoring settlement as well as . . . the realization that compromise is the essence of settlement."  *Id.* (citation omitted).  Courts also "give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks."  *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-1182-CEH-EAJ, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (citations omitted).

Here, regarding the first two Rule 23(e)(2) factors and the analogous *Bennett* criteria, Named Plaintiffs and their counsel have vigorously represented the Settlement Class.  The parties negotiated the Settlement after investigating the facts and merits of their legal claims and defenses, filing a motion to dismiss (Defendant) and a motion to certify the class (Plaintiffs), and conducting discovery commiserate with this stage of the proceeding. *See Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.,* No. 8:03-CV-2246-T-23TGW, 2006 WL 2474062,

at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). In short, the parties can adequately assess the strengths and weaknesses of their case and the benefits of settling.

Additionally, Plaintiffs' counsel is well versed in class actions, including COBRA class actions (*see* Declarations at Docs. 58-6, -7, -8). Named Plaintiffs have actively participated, including sitting for deposition and assisting their counsel whenever necessary. And the Settlement was negotiated at arm's length by attorneys acting in the best interests of their respective clients during a rigorous, hours-long mediation conducted by a well-respected and experienced mediator. There is no evidence of collusion between the parties or bad faith by either side. *Morris*, 2021 WL 2954741, at *8; *Pierre-Val*, 2015 WL 3776918, at *1.

Next is Rule 23(e)(2)(C) and the related *Bennett* consideration regarding the adequacy of relief awarded to the class. The court must consider: (1) the costs, risk, and delay of trial and appeal; (2) the effectiveness of the proposed method of distributing relief to the class, including the method proposed for processing claims; (3) the terms of any proposed award of attorney's fees including the timing of such payment; and (4) the parties' settlement. Fed. R. Civ. P. 23(e)(2)(C). Here, the per-class-member award ($20.00) is within the range of reasonableness and approximates settlement awards approved by courts in the Eleventh Circuit in other COBRA notice class actions. *See Roubert v. Capital One Fin. Corp.*, No. 8:21-cv-2852-TPB-TGW, Doc. 66 (granting preliminary approval of class settlement in COBRA notice case where each class member would receive a gross payment of approximately $17.89); *Morris*, 2021 WL 2954741, at *9 (recommending approval of gross recovery of $40.00

18

to each class member in COBRA notice case); *Vazquez*, No. 8:17-cv-116-MSS-SPF, Doc. 127 (approving gross recovery of $13 per class member in COBRA notice case); *Hicks v. Lockheed Martin Corp.*, No. 8:19-cv-261-JSM-TGW, Doc. 41 (awarding gross recovery of $32.00 per class member in COBRA notice case).

Success at trial is uncertain for either side: Niski and Ferreira stand by the merits of their claim that Wells Fargo's COBRA Notice was deficient, while Wells Fargo denies any liability. As in other cases involving informational injuries, even if Niski and Ferreira prevail the Court could elect a statutory damages award of zero. *See* 29 U.S.C. § 1132(c); 29 C.F.R. § 2575.502c-1 (providing maximum statutory penalty of $110 per day but no minimum penalty); *see also Scott*, 295 F.3d at 1232 (penalty for COBRA notice violation is within the court's discretion). Plaintiffs filed this case nearly 18 months ago; the Settlement will eliminate the need for what likely would be a protracted and costly litigation including further class certification proceedings, summary judgment motions, and trial. *See Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class"). The parties have retained a third-party administrator to facilitate notifying and distributing settlement checks to Settlement Class Members (Doc. 58-2 at ¶ 35). And neither the Settlement nor the amount depends on the Court approving the attorneys' fees award (*Id.* at ¶ 43).

Last up is Rule 23(e)(2)(D) and the remaining *Bennett* factors. The Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation – each Settlement Class Member who timely files a valid claim will receive a check for the same

19

amount, up to $20.00.[6]  The Class Release provision operates equitably, too:  it applies to "any and all claims that have been or could have been brought in this Action with respect to the COBRA Notice sent to each Settlement Class Member at issue in the Named Plaintiffs' Complaint." (Doc. 58-2 at ¶ 47).  It excludes any other ERISA-related claims (*Id.*).  *See* Fed. R. Civ. P. 23, advisory committee's notes to 2018 amendments (stating courts should consider "whether the scope of the release may affect class members in different ways that bear on the apportionment of relief").

Each of Rule 23(e)(2)'s factors and all but one *Bennett* factor favors preliminary approval of the Settlement.[7]  "A proposed settlement should be preliminarily approved if it is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (alteration in the original and quotation omitted).  Considering this and the strong judicial policy favoring settlement, the undersigned recommends the Court find the Settlement fair, adequate, and reasonable.

## V.   APPOINTMENT OF CLASS COUNSEL

The Court recommends that Luis Cabassa and Brandon Hill of Wenzel Fenton & Cabassa, P.A. and Marc Edelman of Morgan & Morgan, P.A. be appointed as Class Counsel for the Settlement Class under Rule 23(g)(1).  Each attorney submits a declaration attesting

---

[6]  The Court discusses the proposed General Release Payments to Niski and Ferreira below.

[7] Because the Settlement Administrator has not yet notified Settlement Class Members, the Court cannot evaluate the fifth *Bennett* factor regarding the amount of opposition to the Settlement.  *See Estate of Dolby*, 2006 WL 2474062, at *6.

to his significant experience litigating labor and employment law cases, in particular serving as class counsel in COBRA cases (Docs. 58-6, -7, -8).  The attorneys have litigated this case from inception through settlement and everything between.  Attorneys Edelman, Cabassa, and Hill are well suited to serve as Class Counsel.

## VI.   APPOINTMENT OF CLASS REPRESENTATIVES AND NAMED PLAINTIFFS' GENERAL RELEASE PAYMENTS

The Court recommends Niski and Ferreira be appointed as class representatives, for reasons explained above.  But their request for general release payments is problematic.  To backtrack, the Settlement envisions Niski and Ferreira each seeking court approval for a $7,500.00 payout from the Gross Settlement, which the parties call a General Release Payment (Doc. 58-2 at ¶ 46).  In exchange for this payment, Niski and Ferreira agree to release Wells Fargo from "any and all claims under federal, state or local laws, statutes, regulations, or ordinances, or federal or state common law." (*Id.* at ¶ 48).

In *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), a Telephone Consumer Protection Act class action, the Eleventh Circuit rejected a $6,000 "Incentive Payment" to the class representative and held that incentive awards to class representatives to compensate for their "time (*i.e.*, a salary) and/or to promote litigation by providing a prize to be won (*i.e.*, as a bounty)" are prohibited.  Here, in a footnote to the Motion for Preliminary Approval, Plaintiffs acknowledge that *Johnson* "held that incentive awards for class action representatives that provide compensation for their time and reward them for bringing lawsuits are prohibited." (Doc. 58 at 7, n.3).  But, they argue, this case is different because the General Release Payments offered to the Named Plaintiffs are not incentive awards.  Instead, they are consideration for their general release of *all* claims they ever could have asserted in

21

this case, not just their COBRA claim (*Id.*).  Plaintiffs cite three post-*Johnson* cases where Middle District of Florida courts approved similar payments to class representatives: *Twardosky v. Waste Management, Inc.*, No. 8:19-cv-2467-CEH-TGW, Doc. 58 (M.D. Fla. June 28, 2021); *Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-AEP, 2021 WL 5843111, at *11 (M.D. Fla. Dec. 9, 2021); and *McNamara v. Brenntag Mid-South, Inc.*, No. 8:21-cv-618-MSS-JSS, Doc. 32 (M.D. Fla. Feb. 17, 2022).

Those cases differ from this one.  In *McNamara*, the district judge approved the settlement of a COBRA class action that included a general release payment to the class representative without discussing *Johnson*.  *See* No. 8:21-cv-618, Doc. 32 (M.D. Fla. Feb. 17, 2022).  In *Twardosky*, a Family Medical Leave Act case, there was a plausible reason for offering the class representative (to the exclusion of other class members) a service award: it was conditioned on the release of his FMLA claim that "had been subject to a demand letter sent by his attorney before this action." No. 8:19-cv-2467-CEH-TGW, Doc. 58 at ¶ 13 (M.D. Fla. June 28, 2021).  And in *Tweedie*, the court approved a general release payment to the class representative in a Fair Credit Reporting Act case despite its concern that the payment was "a thinly veiled attempt at an incentive award[,]" because it did not come from the settlement fund and therefore did not reduce distributions to class members, unlike in this case.  2021 WL 5843111, at *11; *see* Doc. 58-2 at ¶ 46 ("In the event these requests for General Release Payments are approved by the Court, the Settlement Administrator shall issue checks from the Settlement Account made payable to the Named Plaintiffs[.]").

More persuasive is the reasoning of *Roubert v. Capital One Financial Corp.*, No. 8:21-cv-2852-TPB-TGW, 2023 WL 5916714, at *6 (Jul. 10, 2023), in which the Magistrate Judge

recommended rejecting a general release payment to the class representative in a COBRA notice case (represented by the same Class Counsel as this case) because it "appears to merely be a reward for her participating in this lawsuit, which is prohibited under *Johnson*."   The Magistrate Judge reasoned that "if this payment were truly independent of the named plaintiff's participation in this case, it is properly paid with funds outside the settlement fund, if not separately contracted for outside of this litigation." *Id*.   The District Judge adopted this recommendation and rejected the general release payment as a "disguised incentive award." 2023 WL 5320195, at *1 (M.D. Fla. Aug. 18, 2023).

This jibes with other post-*Johnson* cases in this judicial district that scrutinize general release payments to root out "incentive award[s] masquerading under another name." *Roubert*, 2023 WL 5916714, at *8 (*quoting Benitez v. FGO Delivers, LLC*, No. 8:21-cv-221-KKM-TGW, 2022 WL 486127, at *4 (M.D. Fla. Feb. 17, 2022)); *see, e.g., Kuhr v. Mayo Clinic Jacksonville*, 530 F.Supp.3d 1102, 1113 (M.D. Fla. 2021) ("[A]lthough the Revised Agreement provides for an incentive award to the Representative Plaintiff, the Court rejected that portion of the Settlement in the Preliminary Approval Order in light of the Eleventh Circuit's recent *Johnson* decision holding that such awards are impermissible," a fact which "Class Counsel conceded" at the fairness hearing); *Morris*, 2021 WL 2954741, at *10 (rejecting $5,000 service award to class representatives in COBRA notice class action); *Woznicki v. Raydon Corp.*, No. 6:18-cv-2090-Orl-78GJK, 2021 WL 1341655, at *11 (M.D. Fla. Jan. 29, 2011) (finding $5,000 service award prohibited under *Johnson*), *report and recommendation adopted*, 2021 WL 1341523 (M.D. Fla. Feb. 17, 2021); *Miller v. Creative Hairdressers, Inc.*, No. 8:20-cv-912-T-36TGW, 2021 WL 231347, at *1 (M.D. Fla. Jan. 4, 2021) (noting that incentive awards to named plaintiffs

are prohibited under *Johnson* but permitting named plaintiff's higher recovery than the rest of the FLSA collective because it represented two weeks of her paid time off), *report and recommendation adopted*, 2021 WL 229607 (M.D. Fla. Jan. 22, 2021); *Smith v. KFORCE, Inc.*, No. 8:19-cv-2068-CEH-CPT, 2020 WL 7250603, at *2 (M.D. Fla. Dec. 9, 2020) ("Given the recent decision from the Eleventh Circuit Court of Appeals . . . no service award will be approved for the class representatives."); *see also Turner v. Rosen Hotels & Resorts, Inc.*, No. 6:21-cv-161-CEM-DAB, 2022 WL 3046834, at * (M.D. Fla. June 15, 2022) (deferring ruling as to general release payment to named plaintiff – even though it "falls squarely within the proscription of *Johnson*" – pending the Eleventh Circuit's ruling on petition for rehearing in *Johnson*), *report and recommendation adopted*, 2022 WL 3042512 (M.D. Fla. Aug. 2, 2022).[8]

Here, there is no evidence other Settlement Class Members had the opportunity to earn $7,500.00 for executing a general release. Niski and Ferreira are not giving up anything of discernable value by agreeing to the general release – they do not identify any claim they uniquely possess to justify this favorable treatment. And, even if they did identify such claims, that the payments to release their non-COBRA claims would come from a fund created to settle COBRA claims is fishy. At bottom, the General Release Payments are akin to incentive awards. The undersigned recommends the Court reject the Settlement provision that calls for

---

[8] On November 9, 2020, the Eleventh Circuit withheld issuing the mandate in *Johnson* until it ruled on a petition for rehearing en banc. *See Dickenson v. NPAS Sols., LLC*, No. 18-12344 (11th Cir. Nov. 9, 2020). The Eleventh Circuit denied the petition for rehearing on August 3, 2022. *Johnson v. NPAS Sols., LLC*, 43 F.4th 1138 (11th Cir. Aug. 3, 2022). Meanwhile, the parties in *Turner* withdrew their request for the court to approve a service award for the named plaintiff on March 2, 2023. *See* No. 6:21-cv-161-CEM-DAB, Doc. 63 (M.D. Fla. Mar. 2, 2023).

General Release Payments to Niski and Ferreira and instruct the parties to strike from all Settlement documents and Notices any references to General Release Payments.

## VII.   ADEQUACY OF NOTICE

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  For classes certified under Rule 23(b)(3), as in this case, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  Rule 23 "require[s] that class members be given information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir.  2011) (quotations, citation, and original alterations omitted).

Named Plaintiffs have prepared an E-mail Notice, a Short Form Notice, and a Long Form Notice.[9]  The logistical broad strokes for notifying Settlement Class Members of the

---

[9]   Under the Settlement, Defendant is tasked with submitting the notices required under the Class Action Fairness Act to the applicable state and federal officials (Doc. 58-2 at ¶ 56). Defendant represents that it will do so (Doc. 58 at 8).

Settlement are: within 10 days of the Preliminary Approval Order, Wells Fargo will provide the Settlement Administrator with a list of the names, last known physical addresses, and last known e-mail addresses of all Settlement Class Members.  The Settlement Administrator, within 10 days of receiving this list, will e-mail the E-mail Notice to all Settlement Class Members or – if no e-mail address for a particular class member is available – will send that person a Short Form Notice via first-class U.S. Mail.  At the same time, the Settlement Administrator will post the Long Form Notice on a dedicated Settlement Website and make the relevant Settlement documents available to download.  The Settlement Administrator will also establish a toll-free Settlement Telephone Number.  (*See* Doc. 58 at ¶¶ 49-52).  These procedures are reasonable under the circumstances.

Additionally, with the exceptions noted below, the Notices clearly and concisely state all the information required by Rule 23(c)(2)(B) in plain, easily understood language (*see* Docs. 58-3, -4, -5).  The first exception is that the parties should revise the Notices to delete any reference to General Release Payments.  Next, under the heading "What Do I Need to Do to Receive a Payment?", the parties should revise the Short Form Notice to include the e-mail address for submitting claims (Doc. 58-4 at 3).[10]  Third, the Notices should make it clear that any Settlement Class Member who wishes to object cannot do so through the Settlement Website – he or she must mail written objections to the Court via U.S. Mail and also to the Settlement Administrator via U.S. Mail *or* e-mail.  So, under the heading "What If I Don't

---

[10]  The E-Mail Notice and the Long Form Notice both list the physical address and e-mail address.  The Short Form Notice should be revised to include this information and conform to the other Notices.

Like the Settlement?", the parties should revise the Short Form Notice to include the Court's physical address for mailing written objections and the Settlement Administrator's e-mail and physical addresses for mailing objections and opt-out notices (*Id.*).[11]  Similarly, the parties should revise paragraphs 10 and 13 of the Long Form Notice to include the Settlement Administrator's e-mail address (Doc. 58-5 at 7-8).

## VIII.   THE PROPOSED PRELIMINARY ORDER

Except for reference to the General Release Payments in paragraphs 12 and 15, the Proposed Order (Doc. 58-1) is consistent with the Settlement and the relief requested in the Preliminary Approval Motion (Doc. 58).  The undersigned recommends the Court issue an order substantially in the form provided, *i.e.*, the Proposed Order (Doc. 58-1),[12] with the modifications recommended above (including revised Notices).

## IX.   CONCLUSION

The undersigned **RECOMMENDS** that the Court:

1.   **GRANT in part** and **DENY in part** Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 58), as detailed above;

2.   Preliminarily certify the class for settlement purposes;

---

[11]   Although the Short Form Notice states, "[o]bjections may not be made through the settlement website and must be mailed in accord with the procedure set forth in the Settlement Agreement" (Doc. 58-4 at 3), the E-Mail Notice includes an e-mail and physical address for the Settlement Administrator to receive objections (Doc. 58-3 at 2-3).

[12] The Court may want to modify paragraph 3 of the Proposed Order, which retains jurisdiction over "matters arising out of the Agreement." (Doc. 58-1 at ¶ 3).

3.      Preliminarily approve the Settlement (Doc. 58-2) as fair, reasonable, and adequate, except the provision regarding General Release Payments to the class representatives;

4.      Appoint Audra Niski and Nelson Ferreira as class representatives;

5.      Appoint Luis Cabassa and Brandon Hill of Wenzel Fenton Cabassa, P.A. as well as Marc Edelman of Morgan & Morgan, P.A. as class counsel;

6.      Approve the proposed Notices (Docs. 58-3, -4, -5) – the E-mail Notice, the Short Form Notice, and the Long Form Notice – for distribution to the Settlement Class Members, provided the parties amend the Notices to: (1) strike all references to General Release Payments; and (2) reflect the other revisions detailed above;

7.      Schedule a fairness hearing as it deems appropriate.

**IT IS SO REPORTED** in Tampa, Florida, on October 20, 2023.

_____

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on

the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.