## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**GUY BLESSINGER,**[1]
**AUDRA NISKI,**
**NELSON FERREIRA,**
**individually and on behalf**
**of all others similarly-situated,**

     **Plaintiffs,**            **CASE NO.: 8:22-cv-01029-TPB-SPF**

**v.**

**WELLS FARGO & COMPANY,**

     **Defendant.**
_____/

### PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS

Class Representatives, Audra Niski and Nelson Ferreira ("Plaintiffs"), in accordance with the Parties' class action settlement, files this Unopposed Motion for approval of Plaintiffs' attorneys' fees and costs.[2]   In further support thereof, Plaintiffs respectfully submit the following:

### _Brief Summary_

On December 5, 2023, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (*See* Doc. 65).

---

[1] The Class Action Complaint (Doc. 1) was filed in this matter by Plaintiffs Niski and Ferreira, as well as Guy Blessinger. As noted in Plaintiffs' Motion for Class Certification (Doc. 40), Mr. Blessinger is neither a proposed Class Representative nor a Settlement Class Member because he signed a Mutual Arbitration Agreement with Wells Fargo. *See id.* at 1 n.1.

[2] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on July 18, 2023. (*See* Doc. 58-2, pp. 36-67).

Notice was sent to 50,627 Class Members and the reaction to the Settlement overwhelmingly positive.   In fact, as demonstrated by the attached sworn declaration from the settlement administrator to date **zero** objections have been made to the Settlement.  (*See* Declaration of Mark Unkefer from ALCS, ¶¶ 9-10) (hereinafter "Unkefer Dec.").   Not only that, only two class members have requested exclusion.

In sum, Class Counsel undertook this COBRA class action without guarantee of payment and, despite significant hurdles, achieved an excellent result on behalf of Plaintiffs and the Class by securing a gross common fund totaling $1,000,000.00. In light of the result achieved, the risks undertaken by Class Counsel, lack of any objections whatsoever, and the public policy need to provide adequate incentive for attorneys to enforce COBRA's important notice process to participants and beneficiaries in a health plan who experience a "qualifying event," Class Counsel's request for attorneys' fees and costs in the amount of thirty percent of the Settlement Fund, plus costs.   Importantly, Defendant does not oppose this Motion.  A proposed Order is attached as Exhibit A.  In further support of this Motion, Plaintiffs respectfully submit the following:

## I.  BACKGROUND.

### A.  Overview of Motion and Current Posture of the Case.

As explained above, on December 5, 2023, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiffs, on behalf of the Settlement Class, and

Defendant. (Doc. 65.) In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id.* at ¶ 4.) Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and thus far, <u>zero</u> have objected to the Settlement. Only two people person asked to be excluded.  Thus, the reaction by the Class Members could not be more positive.  The objection deadline expires on March 3, 2024.  The Final Approval Hearing is set for April 15, 2024, at 10:00 a.m., in Courtroom 11 B at the United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602.

**B.  <u>Nature of Plaintiffs' Claims</u>.**

This is a putative class action brought by Named Plaintiffs against Defendant under 29 C.F.R. § 2590.606–4(b)(4) et seq. and 29 U.S.C. § 1166(a).  The lawsuit generally alleges that Defendant provided Named Plaintiffs and other members of this putative class with a deficient COBRA Notice.  More specifically, Named Plaintiffs assert that Defendant's COBRA Notice did not adequately inform them and the putative class how to exercise their rights to elect COBRA coverage because, in violation of 29 C.F.R. § 2590.606–4 et seq., Defendant's Notice: (i) included inaccurate and misleading threats of criminal penalties and fines; and (ii) was not written in a manner calculated to be understood by the average plan participant.  As a result of the alleged violations in the Complaint, Named Plaintiffs seek statutory penalties, injunctive relief, attorneys' fees, and costs, on behalf of themselves and a putative class of all others similarly-situated.

### C.  <u>**Wells Fargo's Defenses**</u>.

Had mediation been unsuccessful, Defendant had available to it myriad defenses to Named Plaintiffs' allegations.  Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to Named Plaintiffs and/or any putative class member.  In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Plaintiffs are suitable for class treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever.  The Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  Defendant asserts it agreed to resolve this action through settlement to avoid the uncertainties and expense of further litigation.

### D.  <u>**Procedural History of Case**</u>.

By way of further procedural background, Named Plaintiffs, Audra Niski, and Nelson Ferreira filed their original Complaint on May 3, 2022.  (See Doc. 1).  Defendant filed a potentially dispositive Motion to Dismiss on July 12, 2022, raising a variety of arguments, including failure to state a claim.  (See Doc. 20).  On August 9, 2022, Named Plaintiffs filed a comprehensive response in opposition to

the Motion to Dismiss. (Doc. 24).  The Parties filed their Case Management Report soon thereafter on September 2, 2022. (Doc. 27). The Court entered its Case Management and Scheduling Order on November 4, 2022. (Doc. 33).  The Court granted in part, and denied in part, Defendant's Motion to Dismiss by Order dated January 10, 2023.  (Doc. 37).

Prior to attending mediation, the Parties engaged in significant discovery and were therefore armed with sufficient information to assess the strengths and weaknesses of their respective cases. Named Plaintiffs propounded and received responses to written discovery (requests for production, requests for admission, and interrogatories), deposed Defendant's corporate representative pursuant to Rule 30(b)(6), and obtained a sworn declaration relevant to class certification from Defendant's COBRA administrator, Willis Towers Watson.  In all, Named Plaintiffs received and reviewed approximately 4,000 documents obtained through discovery. For its part, Defendant propounded written discovery, deposed both Named Plaintiffs, and identified an expert.

As stated above, on January 10, 2023, the Court denied, in part, Defendant's Motion to Dismiss. (Doc. 37). On January 31, 2023, Plaintiffs moved for Rule 23 class certification. (Doc. 40). On April 6, 2023, Defendant responded in opposition to Plaintiffs' Motion for Class Certification. (Doc. 50). Thus, having conducted extensive discovery and with briefing on class certification completed and the dispositive motion deadline looming, the Parties attended mediation.

### E.  **Mediation and Settlement**.

On May 19, 2023, Martin Scheinman, an experienced ERISA class action mediator, led the mediation conference. After an entire day of often contentious negotiations, and multiple concessions by both sides, the Parties reached agreement in principle. The Settlement Agreement is the product of the May 19, 2023 mediation conference. The Agreement, if approved, will resolve all claims of Named Plaintiffs and all Settlement Class Members in exchange for Defendant's agreement to pay $1,000,000.00 into the Settlement Account.  Every Settlement Class Member who timely files a valid claim and does not opt out will receive a check for their respective Settlement Payment up to $20.00.

From the Settlement Account will be deducted amounts for the costs of settlement administration, Class Counsel's fees, and litigation costs, resulting in the "Net Settlement Proceeds," which will be allocated among the approximately 50,627 Settlement Class Members that timely file a valid claim, up to $20.00.  Any funds that are unclaimed (which shall only arise when a valid and timely claim is filed for which a check is mailed but then not timely cashed) shall revert to a mutually agreeable cy pres recipient.  The Parties have selected Bay Area Legal Services, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the cy pres recipient.

The Parties negotiated the proposed Settlement on a common fund basis, meaning that the Parties' settlement offers were inclusive of all attorneys' fees and costs, incentive awards, and administrative expenses.  The Parties did not

negotiate attorneys' fees until after agreeing on all terms related to the size of the common settlement fund and the class definition.

**F.     The Court's Order granting Preliminary Approval of the Settlement.**

On December 5, 2023, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class-wide Settlement, with the exception of the General Release payments to Named Plaintiffs, of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (*See* Doc. 65.) Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the approximately 50,627 Settlement Class Members.

As set forth herein, the Settlement Class Members' response to the Notice of Settlement confirms that the Court's preliminary analysis was correct.   The Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and **zero** objected to the Settlement thus far. And only two class members opted-out of the settlement.  Thus far, 4,265 claims have been made, resulting in an almost 10% claims rate. Accordingly, Plaintiffs respectfully request that this Court grant this Unopposed Motion for Attorneys' Fees and Costs.

**G.     The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the

Settlement Class Members on or around December 29, 2023, via email to 6,070 class members and on January 2, 2024 mailed the Notice via first-class mail to 44,557 class members that did not have valid email addresses.  A total of 50,627 Class Notices were sent to members of the Settlement Class.  (*See* Unkefer Dec, ¶ 7).  Thus, the Settlement Class Members overwhelmingly accepted the Settlement. It is estimated that over 97% of the Settlement Class Members received the Class Notice.  Thus far, none have objected.  Only two have opted out.

## II.    THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES AND COSTS SOUGHT.

### A.    The Requested Attorneys' Fees And Costs Are Reasonable And Should Be Awarded.

In accordance with binding precedent from *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991), the Eleventh Circuit and recent courts in this District have ruled that the common fund should be valued at the amount available not the amount claimed. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorney's fees may be determined based on the total benefits available, even where the actual payments to the class following a claims process are lower); *Saccoccio v. JP Morgan Chase Bank, NA.,* 297 F.R.D. 683, 695 (S.D. Fla. 2014) ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1339 (S.D.

Fla. 2007) (same); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (same).

*Camden I* is the preeminent case and binding case in this Circuit dealing with the issue of attorneys' fees in common-fund class-action cases like this one. In that case, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774.

"There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 774. As a general proposition, "the majority of common fund fee awards fall between 20% to 30% of the fund," although "an upper limit of 50% of the fund may be stated as a general rule." *Id.* at 774–75. While the objectors in *Muransky* challenged the district court's decision to award class counsel one-third of the settlement fund as fees as being above the Eleventh Circuit's 25% benchmark, the court nonetheless affirmed the fee award under the well-accepted standards for evaluating fee awards, which Plaintiffs discuss below. *Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1205 (11th Cir. 2018), *opinion vacated and superseded,* 922 F.3d 1175 (11th Cir. 2019), *reh'g en banc granted, opinion vacated,* 939 F.3d 1278 (11th Cir. 2019) ("In *Camden I,* this Circuit called 25% of a common fund a benchmark attorney's fee

award that 'may be adjusted in accordance with the individual circumstances of each case.'"). In the end, the Court has broad discretion to award attorneys' fees. *Id.* at *10.

Although the value recovered for the Class Members is significant, as discussed in *Hamilton v. SunTrust Mortgage, Inc.*, any concerns as to the value of the claims actually paid when considering Class Counsels request for attorney's fees and expenses are "contrary to the law in the Eleventh Circuit . . . ." 2014 WL 5419507, at *7 (S.D. Fla., Oct. 24, 2014). Rather, attorneys in a class action "are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)); *Saccoccio*, 297 F.R.D. 683, 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Casey v. Citibank, NA.*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 223); *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (treating settlement with ascertainable benefits as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant).

Here, Plaintiffs request their Counsel be awarded $300,000 in attorneys' fees, thirty percent of the $1,000,000.00 Gross Settlement amount.  Such a request is in keeping with the Eleventh Circuit's pronouncements above, as well as the well-recognized precept that percentage-of-the-fund fee awards should be

calculated based on the entirety of the fund available for Settlement Class Members. *Camden*, 946 F.2d at 774; *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 767 (11th Cir. 2017) ("[N]o case has held that a district court must consider only the actual payout in determining attorneys' fees."); *Saccoccio*, 297 F.R.D. at 695; *Pinto*, 513 F. Supp. 2d at 1339 (S.D. Fla. 2007) (same); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (same) *Taylor v. Service Corporation Int'l*, No. 20-cv-60709-RAR, 2023 WL 2346295, at *6 (S.D. Fla. March 3, 2023) ("The Eleventh Circuit has approved application of this rule in the context of a claims-made settlement.")

Judge Merryday from the Middle District of Florida granted a nearly identical fee and award in a similar COBRA class action case styled *Valdivieso v. Cushman & Wakefield, Inc.,* Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018).   Likewise, Middle District of Florida Judge Jung granted a one-third common fund fee request in an equally similar COBRA class action case styled *Carnegie v. FirstFleet, Inc. of Tennessee, Inc.*, Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).   Additionally, Judge Moody, also from the Middle District of Florida, approved a one-third common fund fee request in another similar COBRA class action case styled *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019) (granting Plaintiff's counsel one-third of gross common fund, plus costs, in COBRA case).

Similar awards have been obtained in other class action matters in which the undersigned have served as class counsel here in the Southern District of Florida,

including in *Santiago, et al., v. University of Miami*, 1:20-cv-21784-DPG (S.D. Fla. April 7, 2022)(Doc. 66), in which the Court awarded the undersigned one-third of the common fund in an ERISA retirement plan class action cases; *see also Moody, et al. v. Ascenda USA, Inc.*, et al., 0:16-cv-60364-WPD (S.D. Fla., March 12, 2018)(Docs. 113, 114)(Court awarded attorneys' fees of 33 1/3% of common fund in FCRA class action case); *Hargrett v. Amazon.com, DEDC, LLC*, Case No.: 8:15-cv-02456-WFJ-AAS, in which the Court awarded the undersigned 33 1/3% of a common fund in FCRA class action case.  (M.D. Fla. Nov., 16, 2018 (Doc. 187); *Speer v. Whole Foods Market Group, Inc.*, 8:14-cv-03035-RAL-TBM (M.D. Fla., October 9, 2015, Doc. 64) (same); *Patrick v. Interstate Mgmt. Co., LLC*, 8:15-cv-01252-VMC-AEP (M.D. Fla. April 29, 2016, Doc. 48) (same).

The same result should follow here. Indeed, the customary fee for counsel representing a plaintiff in an employment matter such as this depends on the experience and skill level of the involved attorneys. *See In re U.S. Bancorp. Litig.*, 291 F.3d 1035 (8th Cir. 2002) (fee of 36% affirmed); *Waters*, 190 F.3d 1291 (affirming $13.3 million in attorneys' fees from $40 million settlement fund—33-1/3% of total recovery); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (awarding attorney fee of 36%); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285–86 (D. Minn. 1997) (awarding one-third attorney fee); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001).  The same outcome should follow in this case.

Case law has clarified the factors to which a district court is to look in determining a reasonable percentage to award class-action counsel. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden*, 946 F.2d at 772, n.3 (citing factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Muransky*, 2018 WL 2018 WL 4762434, at *11 (affirming the use of these points). "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden*, 946 F.2d at 775. As a final note, the Eleventh Circuit "encouraged the lower courts to consider additional factors unique to the particular case." *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

As set forth below, application of the factors used by courts in the Eleventh Circuit when awarding fees from a common fund to the Settlement achieved in this

case by Class Counsel, as well as those factors unique to this case, demonstrate that an award of fees totaling thirty percent of Settlement Fund is appropriate.

### 1.   __Time and labor required.__

As to the first *Johnson* factor, Class Counsel expended time conducting class action-research; drafting and filing the Complaint; responding to Defendant's Motion to Dismiss; conducting the Defendant's deposition; drafting the Motion for Class Certification; attending the case management and scheduling conference (along with drafting and filing the Joint Scheduling Report); drafting and serving class-wide discovery on Defendant, including requests for production, interrogatories, and a Fed.R.Civ.P. 30(b)(6) deposition notice, along with third-party discovery to Defendant's COBRA administrator; taking and defending depositions; preparing for and attending mediation; drafting, editing, and finalizing the motion seeking preliminary approval of the class Settlement; reviewing and analyzing the proposed Settlement Agreement and supporting attachments, including the proposed class notification documents; responding to inquiries from the class members after Class Notice was sent out; handling questions from the Settlement Administrator; and, of course, drafting this Motion.

Additionally, the Motion for Final Approval still must be drafted and heard, requiring significant preparation time. If the Court grants final approval of the Settlement, Class Counsel will continue to represent the Class and monitor the completion of the Settlement. Class Counsel will also defend the Settlement against appeals by objectors, if any, will oversee the Settlement to ensure that Class

Members receive their Settlement benefits, and will continue to respond to inquiries from Class Members. Therefore, Class Counsel will have significantly more time in this matter to bring it to full and final resolution once the case is complete. For these reasons, and based upon the facts and authority cited herein, Class Counsel respectfully submits that this Court should find that the fees sought by Class Counsel in this action are reasonable and warranted.

### 2 / 3. **This case presented novel and difficult questions requiring a high level of skill to perform the legal services properly.**

The second *Johnson* factor recognizes that attorneys should be appropriately compensated for accepting novel and difficult cases. *Johnson*, 488 F.2d at 718. The third *Johnson* factor is the "[t]he skill requisite to perform the legal service properly." *Johnson*, 488 F.2d 718. This third factor ties directly to the second *Johnson* factor and requires the Court to "closely observe the attorney's work product, his preparation, and general ability before the court." *Id.* Because the second and third *Johnson* factors are tied together, Plaintiffs analyze them together.

Courts in this Circuit recognize that class actions involving various legal theories are, by their nature, exceedingly difficult. *See Yates v. Mobile Cty. Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (noting that extremely complicated litigation requires thorough and detailed research of almost every question involved); *Behrens*, 118 F.R.D. at 547 (observing that the size of the class, the difficult theories of liability, and the always-troublesome problems associated

15

with damages demonstrated that the case was an awesome and complex matter masterfully handled by plaintiff's counsel); *R.C. by Ala. Disabilities Advocacy Program v. Nachman*, 992 F. Supp. 1328, 1334 (M.D. Ala. 1997).

Unlike other common employment law-related claims, such as suits brought under the Fair Labor Standards Act, there are relatively few COBRA class action cases. As a result, this case is novel and presented difficult questions of both fact and law. Accordingly, a small subset of the Bar handle these type of cases, evidenced by the relatively few number of COBRA class action cases filed (or pending). Class Counsel had the expertise to bring this case and the expertise to marshal it to a favorable outcome. Few lawyers have the skill and wherewithal to see this case through, against a sophisticated and well-funded Defendant and top-notch Defense Counsel, to achieve the results obtained here. This factor also weighs heavily in favor of the reasonableness of the requested fee.

The Eleventh Circuit recognizes skill as the "ultimate determinate of compensation level," as "reputation and experience are usually only proxies for skill." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1990).  In *Norman*, the Eleventh Circuit listed several elements that district courts may consider in determining an attorney's skill. 836 F.2d at 1300. First, the court explained that skill may be measured by evaluating the degree of prudence and practicality exhibited by counsel at the beginning of the case. *Id*. Second, skill may manifest itself through arduous preparation and efficient organization, particularly if the case goes to trial. *Id*.  Next, the court explained that an attorney

who has a sharp command of trial practice and a sound understanding of the substantive law governing the case, such that his time may be spent exploring the finer points raised by the issues, should be compensated at a higher rate of pay than one who has to educate himself just to gain a general working knowledge of trial practice and law. *See id.* at 1301. Finally, the court noted that persuasiveness is an attribute of legal skill and defines a good advocate as one who advances his client's position in a clear and compelling manner. *Id.* The Eleventh Circuit also explained that the complexity of the case at hand may indicate skill. *See Yates*, 719 F.2d at 1535. In evaluating the skill involved, the Court should also consider the quality of Class Counsel's opponent. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001).

Applying these factors, Class Counsel have shown themselves to be highly skilled. The complexity of this innovative area of class action litigation, the genuine possibility of Defendant's success in having the case dismissed on standing grounds, the dearth of case law on COBRA class actions, the ability to achieve a favorable outcome despite Defendant's potentially dispositive motions to dismiss and highly skilled Defense counsel, and the complexity inherent with any class action, all demonstrate that Class Counsel are highly skilled practitioners. This weighs in favor of finding the fee sought of one-third of the common fund to be reasonable.

### 4.   Preclusion of other employment.

The fourth *Johnson* factor is "[t]he preclusion of other employment by the attorney due to acceptance of the case." *Johnson*, 488 F.2d at 718. This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes.

Here the hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation. A significant amount of Counsel's time was devoted to this case during the time leading up to mediation. Thus, this factor also militates in favor of finding the Requested Fee reasonable.

### 5.   Customary fee.

The customary fee for counsel representing a plaintiff in an employment matter such as this depends on the experience and skill level of the involved attorneys. The fee sought by Plaintiffs' Counsel is reasonable and customary in this area of law, as evidenced by the fact that, as set forth above, Judge Merryday from the Middle District of Florida granted a nearly identical fee and award in a very similar COBRA class action case styled *Valdivieso v. Cushman & Wakefield, Inc.,* Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018).  Likewise, Middle District of Florida Judge Jung granted a one-third common fund fee request in an equally similar COBRA class action case styled *Carnegie v. FirstFleet, Inc. of*

*Tennessee, Inc.*, Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).   Additionally, Judge Moody, also from the Middle District of Florida, approved a one-third common fund fee request in a similar COBRA class action case styled *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019) (granting Plaintiff's counsel one-third of gross common fund, plus costs, in COBRA case).

Similar awards have been obtained in other class action matters in which the undersigned have served as class counsel here in the Southern District of Florida, including in *Santiago, et al., v. University of Miami*, 1:20-cv-21784-DPG (S.D. Fla. April 7, 2022)(Doc. 66), in which the Court awarded the undersigned one-third of the common fund in an ERISA retirement plan class action cases; *see also Moody, et al. v. Ascenda USA, Inc.*, et al., 0:16-cv-60364-WPD (S.D. Fla., March 12, 2018)(Docs. 113, 114)(Court awarded attorneys' fees of 33 1/3% of common fund in FCRA class action case); *Hargrett v. Amazon.com, DEDC, LLC*, Case No.: 8:15-cv-02456-WFJ-AAS, in which the Court awarded the undersigned 33 1/3% of a common fund in FCRA class action case.  (M.D. Fla. Nov., 16, 2018 (Doc. 187); *Speer v. Whole Foods Market Group, Inc.*, 8:14-cv-03035-RAL-TBM (M.D. Fla., October 9, 2015, Doc. 64) (same); *Patrick v. Interstate Mgmt. Co., LLC*, 8:15-cv-01252-VMC-AEP (M.D. Fla. April 29, 2016, Doc. 48) (same).  For these reasons, this factor also supports granting the requested fee.

### 6.    <u>The case was taken on contingency</u>.

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered into by the attorney. *Johnson*, 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988); *see also Hall v. Board of School Comm'rs*, 707 F.2d 464, 465 (11th Cir. 1983) (concluding that district court abused its discretion where it failed to award an enhancement of the amount of attorneys' fees where plaintiff's counsel was retained under a contingency fee agreement).

Class Counsel undertook significant financial risk in prosecuting this case because it was taken on a contingency basis with no guarantee of recovery. Plaintiffs pursued difficult claims against a well-funded Defendant. There were no assurances that Plaintiffs would survive early motion practice, summary judgment, or trial, much less achieve a $1,000,000.00 recovery for the class.  Plaintiffs' Counsel incurred significant fees in prosecuting this action and has received no compensation thus far. Moreover, there was a very real possibility that Plaintiffs' Counsel would not recover anything for their work, should Defendant succeed at the pleading stages of litigation with a motion to dismiss, or later at summary judgment, trial or, later still, on appeal. For these reasons, this factor supports the approval of the requested amount of attorneys' fees. *Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394-LSC, 2012 WL 2923542, at *17 (N.D. Ala. July 17, 2012).

### 7.   <u>**Time Limitations**</u>.

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718. This case involved significant hours of work and demanded much of Plaintiffs' Counsel's time. Thus, this factor also cuts in favor of finding the fee sought reasonable.

### 8.   <u>**Amount involved and the results obtained**</u>.

Class Counsel recovered a $1,000,000.00 settlement on behalf of the Settlement Class. In doing so, Class Counsel effectively and quickly achieved a high-dollar Settlement that provides meaningful monetary relief for all Class Members, despite significant litigation risks which could have resulted in the Class achieving a significantly worse recovery, or even no recovery at all. Accordingly, given the excellent results achieved, this factor weighs heavily in favor of awarding the Requested Fee.

### 9.   <u>**Experience, Reputation, and Ability of the Attorneys**</u>.

Plaintiffs' Counsel have set forth their qualifications and prior experience in the Declarations they attached to their Motion for Preliminary Approval.  (*See* Docs. 58-6, 58-7, 58-8).   This case has, at all stages, been handled on both sides by very experienced lawyers whose reputations for effective handling of complex litigation are known throughout Florida, and the country. This factor also weighs in favor of awarding the Requested Fee.

### 10. **Undesirability of the case**.

In the above sections, Plaintiffs highlighted the complexity and skill required to prosecute this action. The expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery would make this case highly undesirable for many attorneys.

Additionally, the Settlement is even more impressive when considering the substantial risks of non-recovery in this case. COBRA cases are not "sure things" or "slam dunks." Unlike other employment law statutes, attorneys' fees are discretionary. Therefore, this factor, too, supports the requested amount of attorneys' fees.

### 11. **Nature and length of the professional relationship with the client**.

Plaintiffs' Counsel were not representing long-term clients in this matter. This factor is neutral.

### 12. **Awards in similar cases**.

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. The monetary amount recovered by Class Counsel in this case is comparable and in line with the very few other COBRA class action settlements that exist. For example, as set forth above, Judge Merryday from the Middle District of Florida granted a nearly identical fee and award in a similar COBRA class action case styled *Valdivieso v. Cushman & Wakefield, Inc.,* Case No.: 8:17-cv-00118-SDM-JSS

(M.D. Fla. Dec. 7, 2018).  Likewise, Middle District of Florida Judge Jung granted a one-third common fund fee request in an equally similar COBRA class action case styled *Carnegie v. FirstFleet, Inc. of Tennessee, Inc.*, Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).  Additionally, Judge Moody, also from the Middle District of Florida, approved a one-third common fund fee request in another COBRA class action case styled *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019) (granting Plaintiff's counsel one-third of gross common fund, plus costs, in COBRA case).

Similar awards have been obtained in other class action matters in which the undersigned have served as class counsel here in the Southern District of Florida, including in *Santiago, et al., v. University of Miami*, 1:20-cv-21784-DPG (S.D. Fla. April 7, 2022)(Doc. 66), in which the Court awarded the undersigned one-third of the common fund in an ERISA retirement plan class action cases; *see also Moody, et al. v. Ascenda USA, Inc.*, et al., 0:16-cv-60364-WPD (S.D. Fla., March 12, 2018)(Docs. 113, 114)(Court awarded attorneys' fees of 33 1/3% of common fund in FCRA class action case); *Hargrett v. Amazon.com, DEDC, LLC*, Case No.: 8:15-cv-02456-WFJ-AAS, in which the Court awarded the undersigned 33 1/3% of a common fund in FCRA class action case.  (M.D. Fla. Nov., 16, 2018 (Doc. 187); *Speer v. Whole Foods Market Group, Inc.*, 8:14-cv-03035-RAL-TBM (M.D. Fla., October 9, 2015, Doc. 64) (same); *Patrick v. Interstate Mgmt. Co., LLC*, 8:15-cv-01252-VMC-AEP (M.D. Fla. April 29, 2016, Doc. 48) (same).  For these reasons, this factor also supports granting the requested fee.

23

In sum, the amount of fees and costs sought here total thirty percent of the Settlement common fund.  One-third of a common fund is well in line with fees generally awarded in class action cases, and for settlements of this amount and, pursuant to the factors discussed above, thirty percent should be deemed reasonable.

### B.   <u>Costs</u>.

Pursuant to the Parties' settlement agreement, Plaintiffs are entitled to recover their costs.   To date, Class Counsel has incurred $10,772.94 in reimbursable litigation costs for the filing fee, process service fee, copying and printing costs, and mediator fees.  The undersigned also attested to the costs sought herein in the attached supporting Declarations.  In sum, the costs sought herein by Class Counsel are reasonable and should be awarded from the common fund.

***WHEREFORE***, Plaintiffs respectfully move this Court for an Order awarding their counsel attorneys' fees in the amount of thirty percent of the total Settlement Fund ($300,000), plus litigation costs totaling $10,772.94.

### <u>CERTIFICATE OF GOOD FAITH</u>

Named Plaintiffs' counsel certifies that, in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in this Motion. Defendant does not oppose the relief requested herein.

Dated this 2nd day of February, 2024.

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

-and-

**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-577-4722
Fax: 813-257-0572
Email: MEdelman@forthepeople.com

*Class Counsel and Attorneys for Named*
*Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record for all parties via the Court's CM/ECF filing system on this 2nd day of February, 2024.

/s/ *Brandon J. Hill*
**BRANDON J. HILL**