# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**GUY BLESSINGER,**[1]
**AUDRA NISKI,**
**NELSON FERREIRA,**
**individually and on behalf
of all others similarly-situated,**

      Plaintiffs,                            CASE NO.: 8:22-cv-01029-TPB-SPF

v.

**WELLS FARGO & COMPANY,**

      Defendant.

_____/

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

The Class Representatives, Audra Niski and Nelson Ferreira ("Plaintiffs"), pursuant to Fed.R.Civ.P. 23, file this Unopposed Motion for Final Approval of the Parties' Class Action Settlement. On December 5, 2023, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement" or "the Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 66). In that Order, the Court adopted Magistrate Judge Sean P. Flynn's Report and Recommendation on the Plaintiffs' Unopposed Motion for Preliminary Approval, which found the Settlement terms to be "fair, reasonable, and adequate." (Doc. 62, p. 20).

---

[1] The Class Action Complaint (Doc. No. 1) was filed in this matter by Plaintiffs Niski and Ferreira, as well as Guy Blessinger. As noted in Plaintiffs' Motion for Class Certification (Doc. No. 40), Mr. Blessinger is neither a proposed Class Representative nor a Settlement Class Member because he signed a Mutual Arbitration Agreement with Wells Fargo. See id. at 1 n.1.

Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement to the 50,627 Settlement Class Members. A total of 7,217 class members filed claims. Importantly, <u>zero objections were made by class members</u>. (*See* attached Declaration of Mark Unkefer from Settlement Administrator, American Legal Claim Services, LLC, ¶¶ 6-7) (hereinafter "Unkefer Decl."). Not only that, only three requests for exclusion were received. (*Id*.). Considering the large size of the Class, the Settlement is an excellent outcome.

In sum, little has changed since the Court's Order granting the Plaintiffs' Motion for Preliminary Approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiffs request that the Court enter the Final Approval Order attached as Exhibit A. In further support thereof, Plaintiffs state as follows:

I. **BACKGROUND AND OVERVIEW OF MOTION.**

    A. **Allegations Included in Named Plaintiff's Complaint.**

This is a putative class action brought by Named Plaintiffs against Defendant under 29 C.F.R. § 2590.606–4(b)(4) et seq. and 29 U.S.C. § 1166(a). The lawsuit generally alleges that Defendant provided Named Plaintiffs and other members of this putative class with a deficient COBRA Notice. More specifically, Named Plaintiffs assert that Defendant's COBRA Notice did not adequately inform them and the putative class how to exercise their rights to elect COBRA coverage because, in violation of 29 C.F.R. § 2590.606–4 et seq., Defendant's Notice: (i) included inaccurate and misleading threats of criminal penalties and fines; and (ii)

2

was not written in a manner calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Named Plaintiffs seek statutory penalties, injunctive relief, attorneys' fees, and costs, on behalf of themselves and a putative class of all others similarly-situated.

### B.   Defendant's Defenses.

Had mediation been unsuccessful, Defendant had available to it myriad defenses to Named Plaintiffs' allegations. Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to Named Plaintiffs and/or any putative class member. In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Plaintiffs are suitable for class treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever. The Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. Defendant asserts it agreed to resolve this action through settlement to avoid the uncertainties and expense of further litigation.

### C.   Procedural History of Case.

By way of further procedural background, Named Plaintiffs, Audra Niski,

3

and Nelson Ferreira filed their original Complaint on May 3, 2022. (See Doc. 1). Defendant filed a potentially dispositive Motion to Dismiss on July 12, 2022, raising a variety of arguments, including failure to state a claim. (See Doc. 20). On August 9, 2022, Named Plaintiffs filed a comprehensive response in opposition to the Motion to Dismiss. (Doc. 24). The Parties filed their Case Management Report soon thereafter on September 2, 2022. (Doc. 27). The Court entered its Case Management and Scheduling Order on November 4, 2022. (Doc. 33). The Court granted in part, and denied in part, Defendant's Motion to Dismiss by Order dated January 10, 2023. (Doc. 37).

Prior to attending mediation, the Parties engaged in significant discovery and were therefore armed with sufficient information to assess the strengths and weaknesses of their respective cases. Named Plaintiffs propounded and received responses to written discovery (requests for production, requests for admission, and interrogatories), deposed Defendant's corporate representative pursuant to Rule 30(b)(6), and obtained a sworn declaration relevant to class certification from Defendant's COBRA administrator, Willis Towers Watson. In all, Named Plaintiffs received and reviewed approximately 4,000 documents obtained through discovery. For its part, Defendant propounded written discovery, deposed both Named Plaintiffs, and identified an expert.

As stated above, on January 10, 2023, the Court denied, in part, Defendant's Motion to Dismiss. (Doc. 37). On January 31, 2023, Plaintiffs moved for Rule 23 class certification. (Doc. 40). On April 6, 2023, Defendant responded in opposition

to Plaintiffs' Motion for Class Certification. (Doc. 50). Thus, having conducted extensive discovery, and with briefing on class certification completed and the dispositive motion deadline looming, the Parties attended mediation.

### D.     Settlement Negotiations and Mediation.

On May 19, 2023, Martin Scheinman, an experienced ERISA class action mediator, led the mediation conference. After an entire day of often contentious negotiations, and multiple concessions by both sides, the Parties reached agreement in principle. The Settlement Agreement is the product of the May 19, 2023 mediation conference. The Agreement, if approved, will resolve all claims of Named Plaintiffs and all Settlement Class Members in exchange for Defendant's agreement to pay $1,000,000.00 into the Settlement Account. Every Settlement Class Member who timely files a valid claim and does not opt out will receive a check for their respective Settlement Payment of $20.00.

From the Settlement Account will be deducted amounts for the costs of settlement administration, Class Counsel's fees, and litigation costs, resulting in the "Net Settlement Proceeds," which will be allocated among the approximately 50,627 Settlement Class Members that timely file a valid claim, up to $20.00. Any funds that are unclaimed (which shall only arise when a valid and timely claim is filed for which a check is mailed but then not timely cashed) shall revert to a mutually agreeable cy pres recipient. The Parties have selected Bay Area Legal Services, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the cy pres recipient.

The Parties negotiated the proposed Settlement on a common fund basis, meaning that the Parties' settlement offers were inclusive of all attorneys' fees and costs, incentive awards, and administrative expenses. The Parties did not negotiate attorneys' fees until after agreeing on all terms related to the size of the common settlement fund and the class definition.

### E. The Court's Order granting Preliminary Approval of the Settlement.

On December 5, 2023, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class-wide Settlement, with the exception of the General Release payments to Named Plaintiffs, of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (*See* Doc. 65.) Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the approximately 50,627 Settlement Class Members. The Settlement Administrator deemed 98.49% of the notices delivered. (Unkefer Decl., ¶ 4).

As set forth herein, the Settlement Class Members' response to the Notice of Settlement confirms that the Court's preliminary analysis was correct. The Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and **zero** objected to the Settlement. And only three class members opted-out of the settlement. A total of 7,217 claims were filed.

### F. The Class Member's Reactions to the Settlement.

The Settlement Claims Administrator, American Legal Claim Services, LLC

6

("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on or around December 29, 2023, via email to 6,070 class members and on January 2, 2024 mailed the Notice via first-class mail to 44,557 class members that did not have valid email addresses. A total of 50,627 Class Notices were sent to members of the Settlement Class. (*See* Unkefer Dec, ¶ 7). Thus, the Settlement Class Members overwhelmingly accepted the Settlement. It is estimated that over 98% of the Settlement Class Members received the Class Notice. None objected. Only three requested exclusion. All of these factors support final approval of the Parties' settlement.

## II. THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

### A. The Class Has Already Been Certified on a Preliminary Basis.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 65). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### B. Notice to the Class under Fed.R.Civ.P. 23(e)(1).

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under

7

the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by sending out the Court-approved short form version of the notice to all class members via U.S. Mail and e-mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information. Thus, notice was sufficient.

### C. **Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2)**.

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

#### 1. **The Class Representative and Class Counsel Have Adequately Represented the Class**.

There is no question that the Named Plaintiffs and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement

encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiffs, Audra Niski and Nelson Ferriera, are adequate given that their interests are equivalent to those of the Settlement Class. They were actively involved in this case from an early date, including providing documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in discovery, preparing for and sitting for their depositions, participating in settlement discussions, etc. They, along with their counsel, secured a seven-figure settlement from a highly sophisticated Defendant in favor of the class members they represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously filed declarations by class counsel, *see* Docs. 67-3 (Hill Decl.), Doc. 67-4 (Cabassa Decl.), Doc. 67-5 (Edelman Decl.), and Doc. 67-6 (Heystek Decl.). Additionally, the undersigned have been appointed as class counsel in several other COBRA class action cases, including by this Court in *Bacs, et al. v. Capital One*, 8:21-cv-02852-TPB-TGW (M.D. Fla. August 18, 2023)(Doc. 84), and many other courts, *e.g.*, *Baja v. Costco Wholesale Corp.* 0:21-cv-61210-AHS (S.D. Fla. Dec. 20, 2022)(Doc. 56); *Hicks v. Lockheed Martin Corp*,

9

*Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); *Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action); and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

  **2.**  **The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was

the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. Not only that, the Parties used a highly respected mediator in this case, Martin Scheinman, one of the most respected class action mediators in the country. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

>    3. **<u>The Settlement Provides Adequate Relief to the Class Members.</u>**

11

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The settlement requires Defendant to make available to class members a Settlement Fund of up to $1,000,000 to resolve the claims at issue. This represents a gross recovery of approximately $20.00 per Settlement Class Member who files a claim. This falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Bacs, et al. v. Capital One*, 8:21-cv-02852-TPB-TGW (M.D. Fla. August 18, 2023)(Doc. 84)( approving gross recovery of $17.00 per class member per class member in COBRA class action case); *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (approving gross recovery of $13.00 per class member in 20,000 per class member in COBRA class action case); *Rigney, et al. v. Target Corp.*, 8:19-cv-01432-MSS-JSS (March 14, 2021, Docs. 58-59) (approving $17 gross payment and $10 net payment to class members in COBRA class action case); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement in COBRA notice case in which each class member's gross recovery was $24 and net of $13).

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of Named Plaintiffs being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant.  Named Plaintiffs had yet to survive class certification, summary judgment, and trial.  Each of these phases of litigation presented serious risks,

which the settlement allows Named Plaintiffs and the Settlement Class Members to avoid. *See, e.g. In re Painewebber Ltd. P'ships* Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty.").

The Gross Settlement amount in this Settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Agreement, the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Account, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the amounts it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. Every class member who filed a claim will receive a check for $20.00. If any claims are filed but the corresponding settlement checks

are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient as to those funds only.

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome was far from guaranteed. As discussed below, Plaintiffs faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiffs proved that Defendant violated the COBRA notice regulation, Plaintiffs and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiffs overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed any final adverse judgment, meaning Plaintiffs would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to

risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

### D. The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed the settlement agreement for which they seek final approval. Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these

factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

## IV. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

### CERTIFICATE OF GOOD FAITH

Plaintiffs' counsel certifies that, in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

DATED this 8th day of April, 2024.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
***Attorneys for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of April, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

>/s/ Brandon J. Hill
>**BRANDON J. HILL**