UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUY BLESSINGER, AUDRA NISKI,
and NELSON FERREIRA,
individually and on behalf of all
others similarly-situated,

      Plaintiffs,

v.                                Case No. 8:22-cv-1029-TPB-SPF

WELLS FARGO & COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

In this putative class action, Named Plaintiffs Audra Niski and Nelson Ferreira, former employees of Defendant Wells Fargo & Company ("Wells Fargo"), alleged Wells Fargo sent defective COBRA notices to them and other class members that dissuaded them from electing continued coverage under the company's health plan (*see* Doc. 1). After discovery and motion practice, the parties settled Plaintiffs' claims at mediation (*see* Doc. 55). The district judge adopted the undersigned's Report and Recommendation preliminarily certifying the class for settlement purposes, appointing the Named Plaintiffs as class representatives, and preliminarily approving the class action settlement as fair, reasonable, and adequate except the provision authorizing general release payments to class representatives (*see* Docs. 62, 65). At this juncture, before the Court are Plaintiffs' Unopposed Motion for Final Approval of Class Settlement (Doc. 69) and Unopposed Motion for Attorneys' Fees and Costs (Doc. 67). As directed by the district judge (Doc. 65), the Court

held a final fairness hearing on April 22, 2024 (*see* Doc. 71).  The undersigned recommends Plaintiffs' motions be granted.

## I.      BACKGROUND

Plaintiffs[1] Audra Niski and Nelson Ferreira worked for Wells Fargo and participated in its group health plan (Doc. 1).  After separate qualifying events – Niski was terminated and Ferreira resigned – the company was obligated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161-68, to notify them of their right to continuing insurance coverage through Wells Fargo's health plan (*Id*.).  Plaintiffs filed a one-count class action Complaint in May 2022, contending Defendant's COBRA notice was not written in a manner calculated to be understood by the average plan participant, contained inaccurate and misleading threats of criminal penalties and fines, and failed to provide the contact information of a plan administrator, in violation of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4 (as enforced through 29 U.S.C. § 1132) (*Id*.).  According to Plaintiffs, because Wells Fargo's COBRA notice was defective, they did not elect COBRA continuation coverage, suffered the loss of health insurance benefits, and incurred out of pocket medical expenses (*Id*. at ¶¶ 43-48).

Wells Fargo moved to dismiss Plaintiffs' Complaint for failure to state a claim in July 2022 (Doc. 20).  Plaintiffs timely responded (Doc. 24).  Then, in November 2022, with the motion to dismiss pending, the parties jointly stipulated to the dismissal with prejudice of

---

[1]  Although Guy Blessinger is a named Plaintiff, he is neither a proposed class representative nor a class member because he signed a mutual arbitration agreement with Wells Fargo (Docs. 67 and 69 at 1, n.1).

Plaintiffs' allegation that Wells Fargo failed to identify a plan administrator (Doc. 32); the district judge granted in part and denied in part Defendant's motion to dismiss to reflect the parties' stipulation (Doc. 37).

Meanwhile, Defendant answered the Complaint (Doc. 38), Plaintiffs moved for Class Certification (Doc. 40), and the parties engaged in discovery.  Plaintiffs represent they served class-wide discovery on Wells Fargo (requests for production, requests for admission, and interrogatories), deposed Wells Fargo's corporate representative under Rule 30(b)(6), and obtained a sworn declaration for class certification purposes from Defendant's COBRA administrator Willis Towers Watson (*see* Doc. 58 at 4).   In all, Plaintiffs estimate they reviewed approximately 4,000 documents obtained through discovery.  As for Wells Fargo, it propounded written discovery on Plaintiffs, deposed both named Plaintiffs, and identified an expert (*Id.*).   The parties also negotiated and obtained a stipulated protective order regarding the production and disclosure of confidential information (Docs. 47-48).

In May 2023, before a ruling on Plaintiffs' class certification motion, the parties successfully mediated (*see* Doc. 55).  Informed of the settlement, the district judge directed the parties to file a Preliminary Approval Motion by July 18, 2023 (Doc. 56).  Plaintiffs did so (Doc. 58), and the district judge referred the motion to the undersigned (Doc. 59) and denied Plaintiffs' motion for class certification as moot (Doc. 60).  Plaintiffs submitted the parties' Class Action Settlement Agreement and Release (the "Settlement") (Doc. 58-2) to the Court. It defines the Settlement Class as:

> [A]ll participants and beneficiaries in the Wells Fargo & Company Health Plan who were sent the COBRA notice by or on behalf of Defendant at any time during the Class Period who did not elect COBRA Coverage, excluding individuals who entered into arbitration agreements with Defendant.  The

Settlement Class, consisting of approximately 50,000 members, is to be certified pursuant to Fed. R. Civ. P. 23 for settlement purposes only.

(Doc. 58-2 at ¶ 32).[2]  The Settlement resolves all claims in this action and requires Wells Fargo to deposit one million dollars ($1,000,000.00) into a Qualified Settlement Fund within 14 days of the Effective Date (*Id.* at ¶ 23), which the Settlement defines as 14 days after entry of the Court's Final Approval Order (if other preconditions are met) (*Id.* at ¶¶ 19, 37).

Under the Settlement, the Net Settlement Proceeds[3] will be distributed to eligible Settlement Class Members who submit valid and timely claims (*Id.* at ¶ 38).   "[E]ach Settlement Class Member who submits a Settlement Claim will receive a check out of the Settlement Account for up to Twenty Dollars and Zero Cents ($20.00)." (*Id.* at ¶ 38). The deadline for Settlement Class Members to submit a Settlement Claim is 60 days after a Court-approved Notice of Settlement is mailed to them (*Id.* at ¶ 16), and Plaintiffs submitted proposed Notices of Settlement (including an E-mail Notice, Short Form Notice, and Long Form Notice) (*Id.* at ¶ 25).  Alternatively, Settlement Class Members could opt out or object to the Settlement (*Id.* at ¶¶ 53-54)  The Settlement authorized Plaintiffs to retain a Settlement Administrator to mail the Notices to Settlement Class Members and to publish notice on a

---

[2] The definitions in Section II of the Settlement are incorporated into this Order, and capitalized terms shall have the meanings assigned to them in the Settlement. (*See* Doc. 58-2 at ¶¶ 6-35).

[3] The Settlement defines "Net Settlement Proceeds" as "the amount of money remaining after the Gross Settlement is reduced by the following amounts, none of which Defendant opposes: (a) any General Release Payment of up to $7,500.00 for each Named Plaintiff; (b) any award of Class Counsel's attorneys' fees up to 30% of the total Gross Settlement (*i.e.*, $300,000), plus reasonable litigation costs (up to $10,772.94); and (c) Court-approved costs of the settlement administration process by the Settlement Administrator, including but not limited to distribution of the Notices of Settlement to Settlement Class Members (estimated to be $61,000)." (*Id.* at ¶ 24).

case-specific website, among other administrative tasks (*Id.* at ¶¶ 49-52).[4]  The Settlement Administrator's expenses (estimated at $61,000) will be deducted from the settlement fund (*Id.* at ¶ 45; *see* Doc. 67-2).

Class Counsel will seek fees up to 30% of the Gross Settlement (or $300,000.00) and costs up to $10,772.94 (*Id.* at ¶ 43).  If Net Settlement Proceeds remain after subtracting the total value of the checks the Settlement Administrator cuts for Settlement Claims, attorneys' fees and costs, and the costs of class administration, this amount will "revert as directed by Defendant." (*Id.* at ¶ 40).  If any Settlement Class Member who filed a claim does not cash his or her check in time, that amount will be awarded to Bay Area Legal Services as a *cy pres* award (*Id.* at ¶ 41).

After scrutinizing the Settlement Agreement, the undersigned recommended the district judge grant in part and deny in part Plaintiffs' preliminary approval motion (Doc. 62).  The undersigned disagreed with the Settlement Agreement's proposed General Release Payments to the Named Plaintiffs, characterizing the payments as disguised incentive awards prohibited in the Eleventh Circuit (*see* Doc. 62 at 23-24).  Over Plaintiffs' partial objection, the district judge affirmed and adopted the Report and Recommendation in its entirety, preliminarily approved the class for settlement purposes, and found, on a preliminary basis, that the settlement was fair, reasonable, and adequate except the provisions regarding general release payments to the class representatives (Doc. 65).

---

[4]  Plaintiffs retained American Legal Claim Services, LLC as the Settlement Administrator. Case Manager Mark Unkefer submitted a declaration (Doc. 67-2) and a supplemental declaration (Doc. 69-2) regarding the Settlement Administrator's notice process.

After that, as contemplated by the Settlement, the Settlement Class Administrator ascertained the size of the class (50,627 individuals) and the identity and last known contact information of the Settlement Class Members and mailed them each a copy of the Court-approved Notice of Settlement.  7,217 Settlement Class Members filed claims, three opted out of the Settlement, and no one objected (*see* Doc. 69-2).[5]  Plaintiffs have filed an Unopposed Motion for Attorneys' Fees and Costs (Doc. 67) and Unopposed Motion for Final Approval of Class Settlement (Doc. 69).  The Court held a final fairness hearing on the motions via Zoom on April 22, 2024 (*see* Doc. 71).  No class members appeared at the fairness hearing, no objections to the Settlement were filed before or after the hearing, and no objections were raised during the hearing.

## II.    CLASS CERTIFICATION REQUIREMENTS

In considering the motion for final approval, the Court must revisit the propriety of class certification for settlement purposes and whether the Settlement includes a fair and reasonable method for distributing the Net Settlement Proceeds.  Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b).  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019).  Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)-(4).  Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and

---

[5]  According to the Settlement Administrator, although 7,247 claims were filed, 30 of these were duplicate claims (Doc. 69-2).  The total number of unique claims is 7,217.

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the class representative has standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). And the Eleventh Circuit "instruct[s] district courts to consider several additional factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). They are:

> there was no fraud or collusion in arriving at the settlement and … the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (the "*Bennett* factors").

7

Here, even though the parties settled the case before the Court certified it as a class action, the Court must still determine whether the proposed Settlement Class satisfies Rule 23's certification requirements, albeit for settlement purposes only.   *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997).   The Court must be satisfied that the class representative has standing to sue and that the proposed class "is 'adequately defined and clearly ascertainable.'"   *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *Prado-Steiman ex rel Prado*, 221 F.3d at 1279.   Consistent with the Court's preliminary class certification, the Court recommends final certification of the Settlement Class.

### A. Standing

"[A]ny analysis of class certification must begin with the issue of standing."   *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).   To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).   "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it."   *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc).   At the pleading stage, "general factual allegations of injury can suffice," if they "plausibly and clearly allege a concrete injury."   *Id.* (citations and quotations omitted).   Additionally, a named plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members" to have standing to represent that class.   *Prado-*

*Steiman ex rel Prado*, 221 F.3d at 1279 (citation omitted); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008).

Violating a statutory right to information can create an injury sufficient to confer standing in some contexts. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1003-04 (11th Cir. 2020) (discussing applications of the "informational injury" theory of standing); *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (collecting cases). However, "a bare procedural violation [of a statute], divorced from any concrete harm," is not enough to establish standing. *Spokeo*, 136 S. Ct. at 1549. Instead, a plaintiff must show that the statutory violation either led to actual tangible or intangible harm or "posed a material risk of harm to the plaintiff." *Godiva*, 979 F.3d at 928. And in class actions, the court must still ascertain if the named plaintiffs have standing even if the parties have settled. *Id.* at 924 (noting that the requirement of standing "applies equally in the class action setting" and that a district court is "'powerless to approve a proposed class settlement' if 'no named plaintiff has standing.'") (*quoting Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019)).

Regarding COBRA informational notices like the one Plaintiffs challenge here, courts recognize that one of Congress's goals in mandating such disclosures was to promote access to health insurance coverage among people recently terminated from employment. *See Scott v. Suncoast Beverage*, 295 F.3d 1223, 1230 (11th Cir. 2002). Given "the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay[,]" continued health coverage was of particular concern to Congress. *Morris v. US Foods, Inc.*, No. 8:20-cv-105-SDM-CPT, 2021 WL 2954741, at *4 (M.D. Fla. May 17, 2021) (*citing* H.R. Rep. No. 99-

241 at 44 (1985), *reprinted in* 1986 U.S.C.C.A.N. 579, 622), *report and recommendation adopted*, 2021 WL 6125575 (M.D. Fla. Jul. 14, 2021).

Named Plaintiffs Niski and Ferreira have adequately pleaded that Wells Fargo's notice was statutorily deficient and precipitated them losing their health insurance and incurring medical bills. Specifically, both Plaintiffs allege that the defects in the notice hindered their ability to decide whether to elect COBRA continuation coverage, so they did not obtain such coverage and lost their health insurance (following their respective qualifying events) (*see* Doc. 1 at ¶¶ 42-48). They allege they could not secure appropriate medical care and treatment and paid out-of-pocket for medical expenses (*Id*.). Courts have found standing under similar circumstances. *See Morris*, 2021 WL 2954741, at *4 (M.D. Fla. May 17, 2021) (collecting cases); *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-116-MSS-MAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (certifying class and finding plaintiff had standing because she alleged defendant sent inadequate COBRA notice that resulted in her unpaid medical bills); *cf. Carter v. Southwest Airlines Co.*, No. 8:20-cv-1381-T-02JSS, 2020 WL 7334504, at *4 (M.D. Fla. Dec. 14, 2020) (dismissing class action complaint without prejudice for lack of standing; "unclear how Plaintiff [who maintained health coverage during the relevant period] could be injured by a lack of information about COBRA during a period when she had no need to elect COBRA coverage."). The Named Plaintiffs have standing to bring this case.

## B. Rule 23(a) Requirements

### 1. Numerosity

10

Under Rule 23(a)(1), a plaintiff must show the settlement class is so numerous that joinder is impracticable. *See* Fed. R. Civ. P. 23(a)(1). This requirement is "a generally low hurdle" and "less than twenty-one is inadequate … [and] more than forty is adequate…" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (internal quotations and citation omitted). At the preliminary approval stage, the parties approximated the Settlement Class at 50,000 people (Doc. 58 at 9); indeed, after preliminary approval, the Settlement Class Administrator identified 50,627 Settlement Class Members (Docs. 67-2, 69-2). This number satisfies the numerosity requirement for settlement purposes.

### 2. Commonality

Rule 23(a)(2) requires a plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must "demonstrate that the class members have suffered the same injury," and that "[t]heir claims . . . depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations and citation omitted). A "common contention" is a contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350 (internal quotations and citation omitted). Although the exact claim or statutory violation need not be the same for all class members, "there [must] be at least one issue whose resolution will affect all or a significant number of the putative class members." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014) (per curiam) (citation omitted).

Here, Niski and Ferreira assert that "[a]ll Settlement Class Members were participants or beneficiaries of the Plan, were sent copies of Defendant's allegedly deficient COBRA

11

Notice, and did not elect COBRA continuation coverage following their receipt of the same purportedly inadequate notice." (Doc. 58 at 9-10).  The common questions of law among the proposed class members are: "(1) whether Defendant violated COBRA's notice requirements; [and] (2) whether, and to what extent, statutory penalties are appropriate." (*Id.*).  Resolving these issues will affect all (or close to all) of the class; Rule 23(a)(2)'s commonality requirement is satisfied for settlement purposes. *See Morris*, 2021 WL 2954741, at *5; *Vazquez*, 2018 WL 3860217, at *3.

### 3. Typicality

Rule 23(a)(3) requires that a plaintiff's claims be typical of the claims of the settlement class.  Fed. R. Civ. P. 23(a)(3).  This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted).  Class members' claims need not be identical to satisfy this requirement. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).  Instead, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Niski and Ferreira's claims are typical of the proposed Settlement Class because they concern the same purportedly inadequate COBRA Notice disseminated by Wells Fargo to all Settlement Class Members, arise from the same legal theories (*i.e.*, a statutory violation), and assert the same harm and entitlement to relief.  These allegations establish a sufficient nexus between Niski and Ferreira's claims and those of the class; the Settlement Class meets the

typicality requirement.  *See Morris*, 2021 WL 2954741, at *5; *Vazquez*, 2018 WL 3860217, at *4.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'"  *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

Niski and Ferreira are adequate representatives of the Settlement Class.  They have standing (discussed above), are members of the Settlement Class they seek to represent, and the Court is not aware of any antagonistic interests between Niski and Ferreira and rest of the Settlement Class Members.  Likewise, the Court is satisfied that lead counsel Wenzel Fenton Cabassa, P.A. and Morgan & Morgan, P.A. possess the qualifications and experience to undertake this class action litigation and serve as Class Counsel.  *See* Docs. 58-6, -7, -8; *see also Dukes v. Air Canada*, No. 8:18-cv-2176-T-17JSS, 2019 WL 8358700, at *4 (M.D. Fla. Sept. 6, 2019) (finding adequacy of representation requirement where "Plaintiff and the Settlement Class seek redress of the same alleged wrong" and "Plaintiff's counsel understands the claims in this case and possesses class action experience").  Rule 23(a)(4)'s adequacy requirement is satisfied.

### C. Rule 23(b) Requirements

Next, at least one of the three categories listed by Rule 23(b) as a prerequisite to class certification must also be satisfied. Here, the requirements of Rule 23(b)(3) are satisfied for certification of the Settlement Class. Rule 23(b)(3) requires the court to consider if: (a) "the questions of law or fact common to class members predominate over any questions affecting only individual class members;" and (b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

A predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods.*, 521 U.S. at 623. To satisfy Rule 23(b)(3)'s predominance prong, a court must find that issues subject to generalized proof applicable to the class "predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted). This calls for "a pragmatic assessment of the entire action and all the issues involved." *Cordoba*, 942 F.3d at 1274 (citation omitted). "'[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Id.* (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)). Common issues will not predominate "'if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.*

This case "derive[s] from a standardized COBRA Notice common to all Settlement Class Members. The core inquiry is whether the COBRA Notice complied with applicable

statutory requirements and accompanying regulations, and, if it didn't, whether statutory penalties are appropriate." (Doc. 58 at 14). This determination is central to resolving all class members' claims. And all members of the class allegedly received the same COBRA Notice, an allegation subject to generalized proof. There are few, if any, individualized issues involved and no concern over individualized damages. Plaintiffs satisfy the predominance prong. *See Morris*, 2021 WL 2954741, at *6; *Valdez*, 2018 WL 3860217, at *6.

### 2. Superiority

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Pertinent to the consideration of superiority are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, regarding the first factor, there are 50,627 Settlement Class Members, and the Settlement provides that each of the 7,217 class members who submitted a valid and timely claim will receive a $20.00 check. Considering this modest amount, class members likely would not bring individual lawsuits. The second and third factors also favor class certification – no other member of the proposed Settlement Class has brought any individual COBRA claims against Wells Fargo, and the Middle District of Florida is well-suited to either litigate

15

this case or effect the nationwide settlement.  As to the fourth factor, the fact of settlement obviates the need to "inquire whether the case, if tried, would present intractable management problems, [since] the proposal is that there be no trial."  *Windsor*, 521 U.S. at 620 (citation omitted).  The alternative is the Court managing thousands of individual claims for damages stemming from the same purportedly inadequate COBRA Notice, which is an inefficient use of judicial resources.  For purposes of class settlement, a class action is the superior method for adjudicating these claims.

### D. Adequately Defined and Clearly Ascertainable

Finally, a class must be "adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  A plaintiff must show the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way."  *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).  The identification of "class members is administratively feasible when it is a management process that does not require much, if any, individual inquiry."  *Id.* (internal quotations omitted).

Here, Wells Fargo cooperated in producing information regarding the identity of Settlement Class Members and gave the Settlement Administrator a list of the names, last known physical addresses, and last known e-mail addresses of all Settlement Class Members.  Settlement Class Members were identified by reference to objective criteria, which the parties discerned in an administratively feasible fashion.  The Settlement Administrator attests that the total class size is 50,627 (*see* Doc. 69-2).  This final factor is satisfied.

To summarize, the Settlement Class satisfies Rules 23(a) and (b), the Named Plaintiffs have standing to sue, and the class of 50,627 members is adequately defined and clearly ascertainable.  The Court recommends final certification of the Settlement Class.

## III.    FAIRNESS OF THE AGREEMENT

The Court must also determine if the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding *Bennett* factors.  Courts have substantial discretion in approving a settlement agreement.  *Bennett*, 737 F.2d at 986.  In exercising this discretion, courts consider the "strong judicial policy favoring settlement as well as . . . the realization that compromise is the essence of settlement." *Id*. (citation omitted).  Courts also "give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks." *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-1182-CEH-EAJ, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (citations omitted).

Regarding the first two Rule 23(e)(2) factors and the analogous *Bennett* criteria, Named Plaintiffs and their counsel have vigorously represented the Settlement Class.  The parties settled only after a thorough investigation of the facts and merits of the legal claims and defenses, including: (1) Plaintiffs opposing Defendant's motion to dismiss; (2) Plaintiffs moving for class certification; (3) Plaintiffs serving class-wide discovery (requests for production, requests for admission, and interrogatories), deposing Wells Fargo's corporate representative under Rule 30(b)(6), and obtaining a sworn declaration for class certification purposes from Defendant's COBRA administrator; and (4) Defendant propounding written discovery on Plaintiffs, deposing Named Plaintiffs, and identifying an expert.  The parties

also negotiated and obtained a stipulated protective order regarding the production and disclosure of confidential information (Docs. 47-48).   In short, the parties can adequately assess the strengths and weaknesses of their case and the benefits of settling.  *See Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.,* No. 8:03-CV-2246-T-23TGW, 2006 WL 2474062, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.").

Additionally, Plaintiffs' counsel is well versed in class actions, including COBRA class actions (*see* Class Counsel's Declarations at Docs. 67-3, -4, -5, -6).   Named Plaintiffs have actively participated, including sitting for deposition and assisting their counsel whenever necessary.   And the Settlement was negotiated at arm's length by attorneys acting in the best interests of their respective clients during a rigorous, hours-long mediation conducted by a well-respected and experienced mediator.   There is no evidence of collusion between the parties or bad faith by either side.  *Morris*, 2021 WL 2954741, at *8; *Pierre-Val*, 2015 WL 3776918, at *1.

Next is Rule 23(e)(2)(C) and the related *Bennett* consideration regarding the adequacy of relief awarded to the class.   The court must consider: (1) the costs, risk, and delay of trial and appeal; (2) the effectiveness of the proposed method of distributing relief to the class, including the method proposed for processing claims; (3) any proposed award of attorney's fees including the timing of such payment; and (4) the parties' settlement.   Fed. R. Civ. P. 23(e)(2)(C).   Here, the per-class-member award ($20.00) is within the range of reasonableness and approximates settlement awards approved by courts in the Eleventh Circuit in other

18

COBRA notice class actions. *See Roubert v. Capital One Fin. Corp.*, No. 8:21-cv-2852-TPB-TGW, Doc. 66 (granting preliminary approval of class settlement in COBRA notice case where each class member would receive a gross payment of approximately $17.89); *Morris*, 2021 WL 2954741, at *9 (recommending approval of gross recovery of $40.00 to each class member in COBRA notice case); *Vazquez*, No. 8:17-cv-116-MSS-SPF, Doc. 127 (approving gross recovery of $13 per class member in COBRA notice case); *Hicks v. Lockheed Martin Corp.*, No. 8:19-cv-261-JSM-TGW, Doc. 41 (awarding gross recovery of $32.00 per class member in COBRA notice case).

Success at trial is uncertain for either side: Niski and Ferreira stand by the merits of their claim that Wells Fargo's COBRA Notice was deficient, while Wells Fargo denies any liability. As in other cases involving informational injuries, even if Niski and Ferreira prevail, the Court could elect a statutory damages award of zero. *See* 29 U.S.C. § 1132(c); 29 C.F.R. § 2575.502c-1 (providing maximum statutory penalty of $110 per day but no minimum penalty); *see also Scott*, 295 F.3d at 1232 (penalty for COBRA notice violation is within the court's discretion). Plaintiffs filed this case over two years ago; the Settlement will eliminate the need for what likely would be a protracted and costly litigation including further class certification proceedings, summary judgment motions, and trial. *See Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class"). The parties retained a third-party administrator to facilitate notifying and distributing settlement checks to Settlement Class Members (Doc. 58-2 at ¶ 35). And neither

the Settlement nor the amount depends on the Court approving an attorneys' fees award (*Id.* at ¶ 43).

Last up is Rule 23(e)(2)(D) and the remaining *Bennett* factors. The Settlement treats Settlement Class Members equitably relative to one another – each of the 7,217 Settlement Class Members who timely filed a valid claim will receive a check for the same amount, up to $20.00. The Class Release provision operates equitably, too: it applies to "any and all claims that have been or could have been brought in this Action with respect to the COBRA Notice sent to each Settlement Class Member at issue in the Named Plaintiffs' Complaint." (Doc. 58-2 at ¶ 47). It excludes any other ERISA-related claims (*Id.*). *See* Fed. R. Civ. P. 23, advisory committee's notes to 2018 amendments (stating courts should consider "whether the scope of the release may affect class members in different ways that bear on the apportionment of relief").

Regarding the amount of opposition to the Settlement (the fifth *Bennett* factor), this weighs heavily in favor of the Settlement being fair and reasonable, as there have been no objections and only three out of 50,627 Settlement Class Members opted out of the class (Doc. 69-2). *See Lipuna v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (the "reaction of the class is an important factor" in determining whether a proposed settlement is fair, reasonable, and adequate). Here, as of December 29, 2023 (when the Settlement Administrator emailed the short form Class Notice to 6,070 class members) and January 2, 2024 (when the Settlement Administrator mailed the notice via first-class mail to 44,557 class members without valid email addresses), 50,627 class notices were sent to Settlement Class Members (Docs. 67-2, 69-2). The Settlement Administrator attests that 98% of these notices

were delivered (*Id.*).  Since then, 7,217 claims have been filed, there have been zero objections, and only three class members opted-out of the settlement (*Id.*).  Considering this and the strong judicial policy favoring settlement, the undersigned recommends the Court find the Settlement to be a fair, adequate, and reasonable resolution of the class members' claims and approves the Settlement.

## IV.    ADEQUACY OF NOTICE

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  For classes certified under Rule 23(b)(3), as in this case, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  Rule 23 "require[s] that class members be given information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (quotations, citation, and original alterations omitted).

Here, with minor revisions, the Court approved the Notices (including an E-mail Notice, a Short Form Notice, and a Long Form Notice) after finding the method of providing

notice was reasonable.[6]  The Settlement Administrator obtained a list of Settlement Class Members and their last known addresses from Wells Fargo (Doc. 67-2).  As specified in the Supplemental Declaration of American Legal Claim Services, LLC Regarding Due Diligence and Noticing (Doc. 69-2), the Settlement Administrator then emailed notices to 6,070 class members; 455 of these bounced back.  Next, the Settlement Administrator mailed notices via USPS to 45,012 class members (including to the 455 class members whose emailed notices bounced back) (*Id*.).  Of the notices sent via USPS, 2,676 were returned as undeliverable (*Id*.).  The Settlement Administrator re-mailed 2,149 of these (after researching updated addresses) (*Id*.).  Of these 2,149 re-mailed notices via USPS, 238 came back as undeliverable (*Id*.).  The Settlement Administrator also posted the Long Form Notice on a dedicated Settlement Website and made the relevant Settlement documents available to download (Doc. 67-2).  The Settlement Administrator established a toll-free Settlement Telephone Number.  (*Id*.).

Against this backdrop and upon consideration of the class certification requirements discussed above, the process of notifying Settlement Class Members was adequate under Rule 23(e).

## V.   ATTORNEYS' FEES

In a class action common fund case, the burden of demonstrating that its fee is reasonable is on the party seeking attorneys' fees.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Courts routinely use one of two methods to determine reasonableness: (1) the percentage method, or (2) the lodestar method.  *See In re Home Depot Inc., Customer Data Sec.*

---

[6]  Under the Settlement, Defendant was tasked with submitting the notices required under the Class Action Fairness Act to the applicable state and federal officials.

*Breach Litig.*, 931 F.3d 1065, 1076 (11th Cir. 2019). The Eleventh Circuit, however, has clarified that the percentage of recovery method is the most appropriate for evaluating common fund fee requests. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also Home Depot Inc.*, 931 F.3d at 1081 ("In common-fund cases, we have directed courts to use the percentage method.").

### 1. Percentage-of Recovery Analysis

The "majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This "benchmark" percentage "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. The individual circumstances to be considered in adjusting the percentage of recovery include the twelve factors set out in *Camden I*, namely:

(1)    the time and labor required;
(2)    the novelty and difficulty of the questions involved;
(3)    the skill requisite to perform the legal service properly;
(4)    the preclusion of other employment by the attorney due to acceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the client or the circumstances;
(8)    the amount involved and the results obtained;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the client; and
(12)   awards in similar cases.

*Id.* at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 714-19 (5th Cir. 1974)).[7]  "Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, … and the economics involved in prosecuting a class action." *Id*. at 775.  There will also be, in most instances, additional factors unique to a particular case that will relate to the district court's determination.  *Id.*

### a. Time and Labor Required

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, … they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717 (citation omitted).  Class counsel collectively drafted and filed the Complaint, researched and responded to Defendant's motion to dismiss, deposed Defendant's Rule 30(b)(6) representative, drafted the motion for class certification, attended court hearings, drafted class-wide discovery and third-party discovery to Wells Fargo's COBRA administrator, took and defended depositions, prepared for and attended mediation, drafted the motion for preliminary approval of the settlement, analyzed the proposed Settlement Agreement and Class Notices, responded to questions from Settlement Class Members after the Settlement Administrator mailed the Notices, coordinated with the Settlement Administrator, and drafted Plaintiffs' motions for attorneys' fees and final class approval (*see* Docs. 67-3, -4, -5, -6). The Court finds that the time and labor devoted to this case supports the requested fee award.

---

[7] The "time limitations imposed by the client or the circumstances" factor does not apply in this action and will not be addressed by the Court.  *See Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992) (finding this factor "not directly applicable").

24

### b. Novelty and Difficulty of the Questions Involved, the Skill Required, and the Experience, Reputation and Ability of the Attorneys

These three factors support granting the requested fees.  First, "[t]he trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this [skill of counsel] consideration."  *Johnson*, 488 F.2d at 718; *see also Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level").  Class Counsel practice extensively in state and federal court, including as lead counsel in numerous class actions in the Southern and Middle Districts of Florida and Florida state courts.  Indeed, Class Counsel have successfully litigated deficient COBRA notice class actions in the Middle District of Florida.  *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-cv-118-SDM-JSS (M.D. Fla.); *Hicks v. Lockheed Martin Corp., Inc.*, No. 8:19-cv-261-JSM-TGW (M.D. Fla.); *Vasquez v. Marriott Int'l, Inc.*, No. 8:17-cv-116-MSS-SPF (M.D. Fla.).  In addition, Defendants were represented by very capable Florida and Washington, D.C.-based attorneys who specialize representing employers navigate benefits, retirement, and health care law. *See Ressler*, 149 F.R.D. at 654 ("Moreover, in assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel.").

### c. The Customary and Contingent Nature of the Fee and Preclusion of Other Employment

The requested fee here is customary for a case such as this, *i.e.*, a class action pursued on a contingency basis.  *See id.* ("The 'customary fee' in a class action is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify

charging on an hourly basis."); *Bacs, et al. v. Capital One Fin. Corp.*, No. 8:21-cv-2852-TPB-TGW (M.D. Fla. Aug. 18, 2023) (awarding one-third of common fund in attorneys' fees in COBRA class action); *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-cv-118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (same); *Carnegie v. FirstFleet, Inc., of Tennessee, Inc.*, No. 8:18-cv-1070-WFJ-CPT (M.D. Fla. June 21, 2019) (same); *Hicks v. Lockheed Martin Corp., Inc.*, No. 8:19-cv-261-JSM-TGW (M.D. Fla. Dec. 11, 2019) (same).

The hours required to prosecute this action limited the time and resources that Counsel devoted to other matters over the period of this litigation. *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011) ("It is uncontroverted that the time spent on the Action was time that could not be spent on other matters. This factor too supports the requested fee."). Counsel spent hours researching, investigating, and prosecuting this case on behalf of the Class, including reviewing approximately 4,000 documents produced during discovery and incurring $10,772.94 in out-of-pocket litigation costs. Counsel have had no compensation for their services since suing in 2022 and they had no guarantee that any of those funds would be reimbursed. The Court concludes these factors support the requested fee award.

### d. The Amount Involved and the Results Achieved

The amount involved and the results obtained is the "most important factor" in determining an award of attorneys' fees. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204-05 (S.D. Fla. 2006); *see also Camden I*, 946 F.2d at 774 ("[A] common fund is itself the measure of success … and represents the benchmark on which a reasonable fee will

be awarded …. In this context, monetary results achieved predominate over all other criteria.").

Here, Class Counsel recovered a $1,000,000 settlement on behalf of the Settlement Class. This provides meaningful monetary relief that is within the range of reasonable settlements (see above). The results obtained in this case are reasonable and support the requested fee award.

### e. Fee Awards in Similar Cases

The 30% requested fee award is reasonable and consistent with fee awards granted in other COBRA notice class actions litigated within the Eleventh Circuit. *Bacs, et al. v. Capital One Fin. Corp.*, No. 8:21-cv-2852-TPB-TGW (M.D. Fla. Aug. 18, 2023) (awarding one-third of common fund in attorneys' fees in COBRA class action); *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-cv-118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (same); *Carnegie v. FirstFleet, Inc., of Tennessee, Inc.*, No. 8:18-cv-1070-WFJ-CPT (M.D. Fla. June 21, 2019) (same); *Hicks v. Lockheed Martin Corp., Inc.*, No. 8:19-cv-261-JSM-TGW (M.D. Fla. Dec. 11, 2019) (same); *Santiago, et al. v. Univ. of Miami*, No. 1:20-cv-21784-DPG (S.D. Fla. Apr. 7, 2022) (awarding attorneys' fees on one-third of common fund in ERISA retirement plan class action); *Moody, et al. v. Ascenda USA, Inc., et al.*, No. 0:16-cv-60364-WPD (S.D. Fla. Mar. 12, 2018) (same in FCRA class action); *Hargett v. Amazon.com, DEDC, LLC*, No. 8:15-cv-2456-WFJ-AAS (M.D. Fla. Nov. 16, 2018) (same).

### f. The "Undesirability" of the Case

Here, the "undesirability" of the action supports the requested fee. As discussed above, this class action required representation by experienced counsel willing to take the case

on a contingency-fee basis despite significant legal obstacles the case presented.  The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable.  *See Checking Acct.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight."); *In re Sunbeam*, 176 F. Supp. 2d at 1336 ("possible financial outcome of a case" may make a case undesirable).

### g.  The Nature and Length of Relationship with the Client

Counsel has represented Named Plaintiffs for over two years, and Named Plaintiffs were involved with all aspects of the litigation, including providing deposition testimony. Additionally, Named Plaintiffs do not oppose Counsel's fee request.  This factor supports the requested fee.

### h.  Additional Factors

The lack of objections by the Class also supports the Counsel's fee request.  No Settlement Class Member has objected to the Settlement or the Notice that Class Counsel may seek a fee award up to 30% of the Net Settlement Fund and reimbursement of litigation expenses.  Likewise, only three of the 50,627 Settlement Class Members opted-out of the Settlement.  The absence of objections supports Counsel's fee and expenses requests.  *See Ressler*, 149 F.R.D. at 656 ("The fact that there are no objections to either the Settlement or to Petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request.").  This positive reaction to the Settlement further supports the fairness of the fee request.

### I.    ATTORNEYS' EXPENSES

Class Counsel also seek reimbursement of expenses incurred in prosecuting and resolving the action, totaling $10,772.94.  The expenses incurred were $402.00 in filing fees, $6,750 in mediator fees, and court reporter fees of $1,795.94 and $1,825.00 (*see* Doc. 67-3). The Settlement provides for Class Counsel's recovery of these litigation costs.  These expenses were reasonably incurred and necessary to furthering the interests of the Class during the litigation.  The undersigned recommends that they be approved.

## VI.   CONCLUSION

The undersigned **RECOMMENDS** that the Court:

1. **GRANT** Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (Doc. 69);

2. Finally certify the Settlement Class, as identified in the Settlement Agreement;

3. Appoint Luis Cabassa, Brandon Hill, and Amanda Heystek of the law firm Wenzel Fenton Cabassa, P.A. and Marc Edelman of Morgan & Morgan, P.A. as Class Counsel;

4. Appoint Named Plaintiffs Audra Niski and Nelson Ferreira as Class Representatives;

5. Approve the distribution of the Settlement Funds as specified in the Settlement Agreement;

6. **GRANT** Plaintiff's Unopposed Motion for Attorneys' Fees and Litigation Expenses (Doc. 67) and award Class Counsel their attorneys' fees and expenses (30% of the Settlement Fund, or $300,000, in fees and $10,772.94 in litigation expenses);

7.      Exclude from the Settlement Agreement the three class members who opted

out (Pallavi Khanna, Tran Bao Nguyen, and Surabhi Bhattarai);

8.      Dismiss this action with prejudice against Plaintiffs and all other Settlement

Class Members; and

9.      Retain jurisdiction over this case to enforce the Settlement Agreement, if

necessary.

**IT IS SO REPORTED** in Tampa, Florida, on August 12, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and

Recommendation, any party may serve and file written objections to the proposed findings

and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th

Cir. R. 3-1.  Failure of any party to timely object in accordance with the provisions of

§ 636(b)(1) waives that party's right to challenge on appeal the district court's order based on

the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.